*In re* GLORIA TAYLOR *et al.*, Minors.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* GLORIA TAYLOR, Respondent-Appellant.)

(No. 60779;

First District (5th Division)—July 11, 1975.

Diane Crawford Geraghty, of Chicago (Rick Schoenfield, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Sheldon Gardner, Frederic B. Weinstein, and Stan Twardy, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SULLIVAN delivered the opinion of the court:

Respondent appeals from an order declaring her an unfit parent and appointing a guardian to consent to the adoption of Gloria, Kiki and

Tammy Taylor, respondent's children. John Caldwell, their father, also was declared an unfit parent in this cause, but he has taken no appeal.

Respondent contends that (1) the evidence does not support the finding that she is an unfit parent under the adoption act (Ill. Rev. Stat. 1973, ch. 4, par. 9.1—1D(b)); (2) the petition failed to comply with the requirements of the Juvenile Court Act (Ill. Rev. Stat. 1973, ch. 37, par. 704—1 *et seq.*); and (3) section 9.1—1D(b) of the adoption act is unconstitutional.

The minor children were placed in the custody of the Department of Children and Family Services (hereafter "the Department") in 1969. A neglect finding was entered in their case in 1970. In 1974 the Department petitioned the court to appoint a guardian to consent to the children's adoption, pursuant to section 5—9 of the Juvenile Court Act (Ill. Rev. Stat. 1973, ch. 37, par. 705—9). Section 5—9(1), (3) of the Juvenile Court Act provides that the finding of unfitness of a parent must be made in compliance with the adoption act which, in section 9.1—1D(a) through (1) lists the grounds upon which a parent might be found unfit. The petitions here alleged under subsection (b) thereof that respondent's unfitness was her failure to maintain a reasonable degree of interest, concern, or responsibility as to the children's welfare.

At the hearing on the petitions, the children's foster mother testified for the Department that from the time they were placed in her home respondent had not contacted them in any manner. On cross-examination, the foster mother testified that she did not know whether respondent had attempted to contact the children through the Department.

Gary Morgan, a social worker employed by the Department and assigned to work with the children, testified that he interviewed respondent at Dwight Correctional Center; she told him that she was having trouble when the children were taken and "did not have herself together"; that she opposed their adoption and suggested that her mother (the children's grandmother) take the children until respondent was released. Morgan further testified that the grandmother and a sister of respondent had contacted him about the children and that the grandmother had failed to keep one appointment with him and, when he called her to arrange another, he was unable to do so because she said repair work was being done on her house.

On cross-examination, Morgan testified that at his meeting with respondent at Dwight, she had asked for the children's addresses and that he had refused to give them to her; that respondent had inquired as to whether she could correspond with him, and that he informed her that the Department felt that it was not suitable to do so. Morgan admitted

that it was only because he denied respondent the opportunity that she was not able to contact her children.

Respondent testified that she had made many attempts to communicate with her children from the time they were first taken; that each time she contacted the Department she spoke to a different employee; that she could not remember the names of the employees or the dates on which she spoke to them, but that she thought the names would be in the Department's records; that she had been allowed only one opportunity to see the children and that she had seen them on that occasion; and that at all other times the Department had given her various reasons for delaying or denying her opportunities to make any other contacts. She stated further that she attempted to locate her children through the Social Services at the jail and that she sent money to Morgan, out of her earnings at Dwight, to be used for her children. Respondent testified further that she had failed to keep appointments with caseworkers about her children—once because she was in jail and on the other occasions "for reasons."

Willie Riley, respondent's mother and the children's grandmother, testified that she had attempted to contact the children through the Department; that she talked to a different person every time she called; and that she was given no information about the children. She stated that Department employees promised to call her back concerning her rights to visit the children, but that no one did call back. She testified further that she was present on occasions when respondent telephoned the Department concerning the children's whereabouts. She gave the name of one social worker she contacted, other than Morgan, but stated that only Morgan had been helpful to her. She admitted failing to keep two appointments with social workers—once because plumbers were at her house; the other because of something that came up concerning her children in school.[1]

The guardian *ad litem*, in final argument, stated his opinion that respondent and her husband had attempted to make contact with the children through the Department but were frustrated in those efforts and that they were not well informed about dealing with situations like this. The guardian "urge[d] the Court to render some finding other than the adoption."

---

[1] This witness also testified that respondent had originally left the children in the care of a girlfriend, who called police when her husband did not want her to take care of the children. The record does not show how long the children had been with the girlfriend. This testimony seems to contradict the statement in the neglect petitions that the children were left alone in their apartment without food or adult supervision.

The court then ruled as follows:

> "Let the record indicate the Court heard the testimony and observed the demeanor of the witnesses. I feel that the credibility is with the State's witnesses in this case and there will be a finding of unfitness, pursuant to Section 5—9."

The court entered separate orders finding respondent unfit to have custody of the children and finding it to be in the best interests of each child that a guardian be appointed authorized to consent to their adoption.

## OPINION

Respondent's first contention on appeal is that the evidence fails to support a finding of unfitness within the meaning of subsection D(b) of section 9.1—1 of the adoption act.[2] The State argues that respondent visited the children only once after the children were taken from her; that she failed to keep appointments with the social workers; and that the children never received any letters, telephone calls, gifts or contributions to their support from respondent. It contends this evidence established that respondent failed to maintain the reasonable degree of interest, concern, or responsibility as to the children's welfare required by subsection D(b). Respondent's reply, in essence, is that her attempts to contact the children should be the measure of her maintenance of a degree of interest, concern, and responsibility as to their welfare. She argues that where the evidence shows she tried to contact her children but was prevented from doing so by the Department, she should not be found unfit under this subsection.

We agree with respondent that under the circumstances of this situation, it is her efforts to carry out her parental responsibilities, rather than their success, which should be considered in determining the correctness of a finding of unfitness under subsection D(b), particularly where, as here, it is alleged that the respondent's attempts to fulfill her duties were prevented by the policies or personnel, or both, of the Department. We note the respondent's charges on this point were corroborated by the State's witness, Morgan—the children's caseworker, who admitted that his actions, and only his actions, kept respondent from contacting her children. Further, Morgan testified that he even discouraged re-

---

[2]    "D. 'Unfit person' means any person whom the court shall find to be unfit to have a child sought to be adopted, the grounds of such unfitness being any one of the following:

* * *

(b) Failure to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare."

spondent from corresponding with him concerning the children and stated that he had indicated to her that he did so as a matter of Department policy. While Morgan had been assigned to the children only the year before the hearing, the State produced no testimony to show that any other workers had treated respondent more favorably or to negate her testimony indicating the Department had impeded her efforts to contact her children. Thus, although the State's witnesses were deemed more credible by the trier of fact, who observed their demeanor in testifying, it appears to us that the totality of the evidence shows respondent had attempted to carry out her responsibilities but had been prevented from doing so by the Department.

We believe that *In re Overton,* 21 Ill.App.3d 1014, 316 N.E.2d 201, is controlling here. In reversing a finding that a parent was unfit under section 9.1—1D(b) of the adoption act, the *Overton* court held that where the Department's acts prevented the parent from seeing her children, unfitness had not been proven. The court said, at page 1019:

> "In regard to Colene's visitation, we note that while Colene's case worker did not expressly refuse Colene's right to visit her children, he did not encourage her to visit her children. It is apparent from the record that the case worker felt it was in the best interests of the children that Colene should not visit them and that his feeling was communicated to Colene."

The court went on to note that although the parent in that case notified the Department of the address to which she was moving in Missouri; that school in Missouri started in August rather than September; and, although she had expressed concern for her children, the Department never communicated with her while she was in Missouri and only "inquire[d] of the Missouri Public Aid Department concerning Colene." (21 Ill.App.3d 1014, 1019.) Considering these and other facts, the court concluded that:

> "The conduct of the Department virtually insured that once Colene was separated from her children she would eventually lose them permanently." 21 Ill.App.3d 1014, 1019.

In *In re Deerwester,* 131 Ill.App.2d 952, 267 N.E.2d 505, the court reversed a finding of unfitness under the same subsection D(b) where the parent, attempting to arrange an appointment to see her child, called the Department, was told to call back in 2 weeks, did so but could not get the caseworker, called again the next week, again could not get the caseworker and then gave up trying. The court held that failure to visit under such circumstances did not constitute unfitness for failure to maintain a reasonable degree of interest, concern, and responsibility as to the child's welfare. Compare *In re Moriarity,* 14 Ill.App.3d 553, 302 N.E.2d

491, where it was held that abandonment was not proven under section 9.1—1D(a) of the adoption act where the parent did not visit her children after the probation officer told the parent that a court order was required before she could visit them.

It appears to us that these cases stand for the proposition that, where official acts prevent a parent from maintaining contact with a child, unfitness under the adoption act cannot be proven by such lack of contact standing alone. Here, respondent testified that her efforts to reach the children were frustrated by the Department. This testimony was supported by that of her mother and was unrebutted by the State. Morgan, the only employee of the Department to testify, admitted the attempts by respondent to see her children after he was assigned to the case in 1973, and he admitted also that the only reason she was unable to contact them was because he denied her the opportunity to do so. We do not believe that the Department should be permitted to prevent a parent from contacting her children and then claim that the parent is unfit solely because she did not do so.

■■ We conclude from our review of the record that the finding of unfitness was against the manifest weight of the evidence and should be reversed.

■■ The trial court also held it to be in the best interest of each child that a guardian be appointed to consent to the children's adoption. However, as stated in *Deerwester*:

> "In order for the court to empower a guardian to consent to an adoption without the consent of the natural parent, the natural parent must be found to be an unfit person, as such is defined in the Adoption Act. [Citation.]" (131 Ill.App.2d 952, 954.)

The evidence not supporting the finding of unfitness, the orders appointing the Department of Children and Family Services as the guardian of each child to consent to adoption must also be reversed.

In view of these holdings, we need not consider the other issues raised by respondent. Furthermore, we point out that nothing in our decision precludes the State from filing another petition or prevents respondent from petitioning for the restoration of her parental and custodial rights.

Reversed.

BARRETT, P. J., and LORENZ, J., concur.