*In re* ADOPTION OF STEFAN CHARLES BARKER, a Minor. —(DENNIS CHARLES BARKER, Petitioner-Appellee, *v.* ROBERT EARL HAGEMANN *et al.*, Respondents-Appellants.)

Second District (2nd Division)    No. 75-171

Opinion filed April 19, 1976.

Douglas F. Comstock and Donald L. Gimbel, both of Geneva, for appellants.

No brief filed for appellee.

Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:

This case questions the validity of an order under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, §72) vacating a decree of adoption.

Stefan Charles Barker is the 9-year-old son of Dennis Charles Barker (hereinafter, petitioner) and Carol Jean Hagemann, who were divorced when the boy was about 2 years old. The boy and a younger sister by the same marriage have lived with their mother and her second husband, Robert Earl Hagemann (respondent) since shortly after the divorce. In December of 1972, petitioner filed a motion for certain visitation rights so that he could periodically bring Stefan to Michigan where petitioner resides. Petitioner was represented in that matter by the same counsel as is involved in the case at hand.

On January 12, 1973, the Hagemanns filed a petition for adoption, and petitioner was served with summons on January 22, 1973. On the same day, he called his attorney in Illinois and notified him of the receipt of the petition for adoption. There ensued an extended period during which petitioner and attorney attempted to negotiate the attorney-client

relationship. On February 7, 1973, counsel wrote petitioner indicating the need to appear "on February 12, 30 days [*sic*] after service of summons," and requested a $500 retainer "by that date or very shortly thereafter." On February 21, counsel served respondent's attorney with a notice of intention to file an appearance and answer in behalf of the father on February 26, 1973. On February 22, a default order was entered; no notice thereof was mailed to petitioner or his representative. Petitioner's attorney failed to appear on February 26 as his notice indicated. So far as the record shows, the court was not informed of indications that petitioner had retained counsel and was preparing to contest the case. On February 28, a default decree of adoption was entered against the petitioner, also without notice to him or his attorney. On March 2, the petitioner's attorney sent petitioner an answer to be signed, notarized and returned, and asked for $100 retainer "before we represent you in this matter." In the same month the attorney discovered that a decree of adoption by default had been entered. He testified that he was unable to determine the date of entry of said decree because the adoption file had been impounded.

Petitioner signed the answer on March 26, but delayed mailing it to his counsel for another month. On April 30, 1973, he returned it and apologized for the delay in sending a retainer, explained that he was out of work, and asked if a token payment of $5 to $10 would be sufficient until his financial situation improved. The attorney's response to this request is not immediately apparent, but on July 12, counsel filed petition to vacate the decree of adoption under section 72. The court found that service of summons had not been correctly made and that it therefore had no jurisdiction over the respondents. On November 27, 1973, proper summons issued and service was had on December 5, 1973. About a year later, a hearing was had on the section 72 petition, resulting in the order vacating the petition for adoption. It is from this order that respondents appeal.

The issues posed by this case are: (1) was the vacation under section 72 improper since petitioner and his attorney failed to formally respond to the adoption proceedings until several months after entry of the decree of adoption; (2) did the court properly vacate the adoption despite the alleged disruption this would cause in the life of the child; (3) was the court correct in excluding evidence of the relationship which grew between adoptive father and son during the time between the date of the adoption and the vacation of the decree.

■■ The purpose of a petition under section 72 is to enable a party to bring before the court facts not appearing of record which, if known to the court at the time of judgment, would have prevented its rendition. (*Glenn v. People*, 9 Ill. 2d 335, 340 (1956); *Brockmeyer v. Duncan*, 18 Ill.

2d 502, 505 (1960).) In order to vacate a default judgment under this section, the petitioner must show (1) the existence of a meritorious defense and (2) freedom from negligence on his own part. (*Glenn* at 340.) It has been repeatedly held by our courts that such a petition is not intended to relieve a party from the consequences of his own mistakes or negligence. (*Brockmeyer*, at 505; *Brainerd v. First Lake County National Bank*, 1 Ill. App. 3d 780, 783 (1971).) The policy reason behind the due diligence requirement—the need · for finality of judgments—and the consequences of ignoring it, are well stated in *Danforth v. Checker Taxi Co.*, 114 Ill. App. 2d 471, 475-76 (1969), and in *Suarez v. Yellow Cab Co.*, 112 Ill. App. 2d 390, 394-97 (1969).

Where there is fraud or unfair conduct on the part of the plaintiff, the second requirement—due diligence by defendant—need not be strictly enforced. *Elfman v. Evanston Bus Co.*, 27 Ill. 2d 609, 613-15 (1963), and see *Esczuk v. Chicago Transit Authority*, 39 Ill. 2d 464, 467-69 (1968), and *Burkitt v. Downey*, 102 Ill. App. 2d 373, 377-81 (1968).

In the case at hand, the trial court determined that the petitioner had a meritorious defense to the adoption. This is not disputed on appeal. Moreover, we feel the indication that petitioner had retained counsel and was preparing to contest the case (known to the plaintiff through counsel's notice of motion on or about February 21, but apparently unknown to the trial court at the time the default decree was awarded) is an additional fact not appearing of record which, if known to the court at the time of judgment, would, most likely, have dissuaded it from rendering the default decree.

The trial court also found that the petitioner had acted with due diligence. On the record before us, we are unable to wholly agree. It does appear that petitioner initially exercised some diligence in attempting to secure representation in this case. From the evidence in the record, the failure of counsel to appear on behalf of petitioner on February 26, 1973, as noticed (2 days prior to the entry of the default decree) apparently occurred because the attorney had not as yet received the requested retainer. However, we point out that petitioner had indications from the attorney that the retainer would be due at the time of the appearance or "very shortly thereafter." The decree was entered only 2 days later. Thus, we believe petitioner did not utterly neglect the protection of his rights prior to the entry of the decree. However, there were other, less excusable delays: the time between petitioner's receipt of the answer for signature (early March 1973) and his return of the answer without a retainer (April 30, 1973), and the additional 2½ month delay (between September and November of 1973) in issuing proper summons.

■■ We believe, however, that the failure of respondent's attorney to bring to the trial court's attention, before the decree was entered, the

indication he had that petitioner had counsel and intended to contest the case, considered with the fact that the adoption file was impounded, removes the full onus of the due-diligence requirement from the petitioner.

As we pointed out in *Brainerd v. First Lake County National Bank*, at 783, "a petition brought under Section 72 is addressed to the legal discretion of the trial court and a court of review will not interfere with the exercise of that discretion unless there is an abuse." There is no such abuse of discretion under the factual circumstances in this case.

Respondent's remaining issues amount to a single argument: the trial court should have considered the best interests of the child as the controlling factor in determining whether or not to vacate the adoption. Specifically, respondents claim that the court erred in refusing to admit evidence of the growing relationship between child and adoptive father, and erred in vacating the adoption despite evidence of the disruptive effect this action would have on the child. This disruption consisted primarily of the uneasiness the child apparently felt at having to explain to his peers his reverse name change and his "unadoption." The basic personal relationship between the boy and the stepfather would not, however, appear to be significantly altered, as the boy remains in the custody of his mother and stepfather. Thus the actual harm to the boy from the vacation of the adoption seems minimal.

■■ Moreover, there is a more basic reason that respondent's arguments fail. While the best interests of the child are paramount in a custody case, a distinction must be made between the rules applicable in custody cases and those in adoptions. Unlike custody decisions, an adoption proceeding cuts off, for all time, the rights and interests of the natural parent, including the property rights of inheritance and the equally important personal right of visitation. Thus, the accommodation between the parent's rights and the child's best interest is different in an adoption. The best interest of a child, while a primary factor, is not controlling in an adoption *(In re Petition of Smith,* 4 Ill. App. 3d 261, 265 (1972)), since "a clear case must be made establishing the statutory grounds *before a consideration of the best interests of the child can be made."* (Emphasis added.) *In re Shuman,* 22 Ill. App. 3d 151, 153 (1974).

■■■ The petition for adoption alleged that the father was unfit as he failed to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare, substantially and repeatedly neglected the child, and repeatedly and continually failed to support him. These grounds, with the exception of the allegation of non-support, are substantial restatements of the statutory basis for determining the unfitness of a natural parent, as found in the Adoption Act of 1959, and as

amended, section 1D(b), (d). (Ill. Rev. Stat. 1973, ch. 4, §9.1—1D(b), (d).) We assume that the allegation of failure to support would be subsumed in the category of "other neglect of or misconduct toward the child" found at section 1D(g) of the same Act. Although there was some conflict in the testimony, the proofs entered at the hearing *on the father's section 72* petition fully support the trial court's conclusion that petitioner had a meritorious defense. It was uncontroverted that he lived in Michigan some 300 miles away from the child's residence, that he nevertheless maintained some telephone contact, sent the boy letters and presents (some of which were returned unopened), that he had paid substantial amounts for the child's support, had (about 2 months before the petition for adoption was filed) invited the boy to visit during Thanksgiving week and, when this request was denied by the boy's mother, had retained counsel to try to secure the right to visitation with the boy at his home in Michigan. Since, on this proof, a clear case establishing the statutory grounds was not made, the trial court was correct in excluding the evidence of the boy's growing relationship with his adoptive father and in not considering as controlling the possible disruption to the boy which might be occasioned by vacation of the adoption.

■■ In closing, we note that the petitioner-appellee filed no answering brief in this case. In accordance with *First Capital Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128 (1976), we have considered the merits of the case on appeal.

The order of the trial court, vacating the decree of adoption, is affirmed.

Order affirmed.

RECHENMACHER and DIXON, JJ., concur.