*In re* MELODY RENAY HRUSOSKY, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* BETTY HRUSOSKY, Respondent-Appellant.)

Third District   No. 75-304

Opinion filed June 30, 1976.

STENGEL, J., specially concurring.
BARRY, J., dissenting.

Paul E. Thurlow, of Joliet, for appellant.

Martin Rudman, State's Attorney, of Joliet (Michael T. Neese, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

This is an appeal from a decree of the Circuit Court of Will County finding that the father of the child Melody Renay Hrusosky had consented to adoption and that the mother, Betty Hrusosky, was unfit due to "failure to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare." The Department of Children and Family Services moved the trial court for authority to place Melody Renay Hrusosky, a ward of the court, for adoption (Ill. Rev. Stat. 1975, ch. 4, par. 9.1—5; ch. 37, par. 705—9; ch. 4, par. 9.1—1D(b)). The mother, Betty Hrusosky, appeals from such order of the trial court, arguing that the evidence was insufficient to support a finding of unfitness.

From the record it appears that the minor, Melody Hrusosky, was born on August 15, 1968, and was immediately placed with the Department of Children and Family Services pursuant to previous arrangements made by Mrs. Hrusosky and papers signed by her on the day after the child's birth. Melody has been in the foster care of the Gordon family since that time. The arrangement was formalized in February 1969 when the child was made a ward of the court (Ill. Rev. Stat. 1969, ch. 37, pars. 704—1 et seq.) by order of the circuit court and an order of protection was issued against the parents of the child, prohibiting them from visiting the child or otherwise interfering in the guardianship of the child without further order of court or permission of the guardian.

Three years later, on February 24, 1972, the Department petitioned the court for authority to place the child for adoption, asserting that appellant was unfit as defined in the Adoption Act due to both abandonment and failure to maintain a reasonable degree of interest. (Ill. Rev. Stat. 1971, ch. 4, par. 9.1—1D(a), (b)). The parties appeared in court in March of 1972, at which time the matter was transferred by the then sitting judge to another judge of the Circuit Court of Will County. Nothing else appears

of record until May 13, 1974, when the Hrusosky parents appeared before the circuit judge in a divorce proceeding and the still-pending juvenile petition was brought to the court's attention. The father at that time consented to adoption, and, after a hearing, the mother, Betty Hrusosky, was found to be unfit on one of the grounds alleged in the petition.

At the hearing Mrs. Hrusosky testified that she originally gave the child to the Department for several months because she did not think she could adequately care for her at home, with several other children to worry about and considerable difficulty in her marriage. Mrs. Hrusosky said she wanted someone to care for Melody for a few months while she looked for a job, and that she always intended to regain custody eventually. She asserted that the Department personnel thwarted her constant efforts to visit the child and that she at no time indicated agreement with plans to put Melody up for adoption.

A child counselor for the county testified that he counseled the Hrusoskys during the first part of 1969. He stated that while the father indicated an interest in having Melody returned, Mrs. Hrusosky opposed the idea and said she did not want the child. Mrs. Hrusosky told the witness that she could not take care of Melody in addition to the other children, and that she did not want Melody around while she and her husband were not getting along. Another witness, a caseworker for the Department, testified that she had 12 to 15 interviews with the mother until February 1972, when the petition referred to herein was filed. She said that while Mrs. Hrusosky did make a couple of inquiries regarding visitation, she thought it best to postpone any such plans because the Department had thoughts of placing the child up for adoption. When the idea of adoption was presented to Mrs. Hrusosky, the witness said Mrs. Hrusosky indicated her agreement with this procedure. Because of the mother's acquiescence in the adoption plan, no specific arrangements for visitation were ever made.

When the adoption petition was filed in February 1972, and Mrs. Hrusosky appeared in court on the petition in March of 1972, she indicated her continuing approval of adoption of the child but was angered at being labelled "unfit" in the petition. Mrs. Hrusosky also indicated her approval of adoption as late as the court hearing in May 1974, on her divorce, provided she got visitation rights.

The evidence disclosed that Mrs. Hrusosky visited the child only once in the six years between the original placement and the date of the hearing in the cause with which we are now concerned, in December 1974. The foster mother, Mrs. Gordon, testified that Mrs. Hrusosky called twice in 1969 or 1970, once to say she could not keep another appointment for visitation, and the other time to say she did not want to see the child and

to ask if the Gordons would like to adopt Melody. Other than a toy given at the time of one visitation, Mrs. Hrusosky did not send any gifts or letters to Melody during the six years of foster care prior to the hearing.

Defendant asserts that she as a natural parent has superior rights to custody of the child as against others (*McAdams v. McAdams* (4th Dist. 1964), 46 Ill. App. 2d 294, 298, 197 N.E.2d 93). While we accept this general principle, it is established by the statutes of this State that the public policy, when a natural parent becomes unfit, is to terminate the parental rights and place the child for adoption (Ill. Rev. Stat. 1973, ch. 4, par. 9.1—1D). Recognizing the basic right of the natural parent, the courts have made it clear that such termination of parental rights can be made only by clear and convincing evidence and in strict compliance with the provisions of the Adoption Act. (*In re Ybarra* (1st Dist. 1975), 29 Ill. App. 3d 725, 729, 331 N.E.2d 224; *In re Overton* (2d Dist. 1974), 21 Ill. App. 3d 1014, 1018, 316 N.E.2d 201). In the instant case we find an analogy to the facts in the cases of *In re Perez* (1st Dist. 1973), 14 Ill. App. 3d 1019, 304 N.E.2d 109, and *In re Grant* (1st Dist. 1975), 29 Ill. App. 3d 731, 735, 331 N.E.2d 219. In these cases, a mother gave up her child shortly after its birth and showed only passing interest thereafter. (See also *In re Ladewig* (1st Dist. 1975), 34 Ill. App. 3d 393, 340 N.E.2d 150, and *In re Einbinder* (1st Dist. 1975), 31 Ill. App. 3d 133, 334 N.E.2d 187.)

In other cases where the appellate court reversed the trial court order terminating parental rights, the time of separation between the parent and the child was often much less than in the case before us. There were problems such as long distances between parent and child and a corresponding lack of transportation for the parent. The evidence showed in those cases an attitude of blocking visitation attempts on the part of the Department and there was usually a showing of many attempts at visitation by the parent, or at least constant inquiry by the parent as to the child's health and situation, and the regular sending of letters and presents to the child. *In re Taylor* (1st Dist. 1975), 30 Ill. App. 3d 906, 334 N.E.2d 194; *In re Ybarra* (1st Dist. 1975), 29 Ill. App. 3d 725, 331 N.E.2d 224; *In re Overton* (2d Dist. 1974), 21 Ill. App. 3d 1014, 316 N.E.2d 201.

In the cause now under consideration, we do not find evidence of the above factors or any reason which would adequately excuse what appears to be a lack of concern and interest on the part of Mrs. Hrusosky. While she claimed that Department personnel rebuffed her constant efforts to see the child, the testimony of the caseworker indicated that the mother inquired about visitation only a couple of times and that she seemed more interested in having the foster parents adopt Melody. This attitude was corroborated by the recollection of the child counselor for

the county, as a result of his contacts with the Hrusoskys, and also, by Mrs. Gordon's testimony, which showed very little effort by Mrs. Hrusosky to get in touch with the child.

Mrs. Hrusosky points to the February 1969 order which required her and the father of the child to avoid interfering with the guardianship, absent permission of the court or the Department. It is notable, however, that Mrs. Hrusosky made only a couple of inquiries to the Department and none to the court over the six-year period concerning visitation or modification of the court order.

■■ On the basis of the evidence before the court and with a realization that an appellant must clearly show that the trial court made a determination contrary to the evidence in the case, we conclude that the decree of the Circuit Court of Will County is required to be affirmed. For the reasons stated the judgment of the Circuit Court of Will County is affirmed.

Affirmed.

Mr. JUSTICE STENGEL, specially concurring:

The majority opinion ignores the trial court's statement of reasons for its decision, which was in part, as follows:

"The fact of the matter is that, this cause languished for five years. And the Court at this time wishes to note for the record a judicial disfavor of the policy and procedures of the Department of Children and Family Services which allowed a case to languish for a period of five years, thereby permitting and allowing a relationship of foster parents to a Ward of the Court to develop into and ripen into a relationship of parent and child. The opinion of the Court is that this type of action usurps the Judicial function for the reason that it practically dictates the judgement of the Court, where the Court finally after a period of better than five years is called upon to decide the future of a child. And the law tells the Judge that the best interest of the child is the paramount consideration. In effect, the Department of Children and Family Services makes the decision by permitting the case to lay dormant and allowing the foster parents to keep the child in a situation where a relationship of parent and child develops. In my opinion this is unconscionable, but there isn't anything this Court can do. As far as the Court is concerned I am compelled to look at now what is in the best interest of the child. And I have evidence before me which convinces me that to tear the child away from the foster parents at this time would not serve the best interest of the child. Therefore, the order of the Court is that the—first of all the finding

that the non-consenting parent is unfit. And the order of the Court is that the petition be allowed. And regarding the child, I empower the guardian to consent to adoption."

The trial court thus based its decision not on a finding based on the allegation that the mother failed to maintain a reasonable degree of interest, concern or responsibility for the welfare of her child and was therefore unfit, but instead on a finding that the best interest of the child required that the child remain in the custody of the foster parents which then necessitated an order finding the mother unfit. The court placed the proverbial cart before the horse.

The Juvenile Court Act, section 5—9 (Ill. Rev. Stat. 1975, ch. 37, par. 705—9), is very specific in its requirements for permanent termination of all parental rights.[1] A finding of unfitness is a fact question separate and distinct from the best interest of the child, and unfitness must be found before the court determines whether the best interest of the child requires giving a guardian the power to consent to adoption.

A finding of unfitness on grounds set out in the Adoption Act (Ill. Rev. Stat. 1975, ch. 4, par. 9.1—1), is a prerequisite to adoption where a parent does not consent. As this court has stated, "The Court must first determine if statutory grounds for adoption exist * * *. Accordingly, a clear case must be made establishing the statutory grounds before a consideration of the best interests of the child can be made." *In re Adoption of Jollay* (3d Dist. 1974), 22 Ill. App. 3d 151, 319 N.E.2d 287, 288; *In re Adoption of Barker* (2d Dist. 1976), 37 Ill. App. 3d 721, 346 N.E.2d 26. Also, *In re Deerwester* (4th Dist. 1971), 131 Ill. App. 2d 952, 267 N.E.2d 505; *Oeth v. Erwin* (4th Dist. 1955), 6 Ill. App. 2d 18, 126 N.E.2d 526; *Jackson v. Russell* (3d Dist. 1951), 342 Ill. App. 637, 97 N.E.2d 584.

The case at bar is not an adoption proceeding where the court must determine both whether the natural parent is unfit and also whether the adopting parent(s) are appropriate persons to raise the child. Instead, the only question is whether the natural mother is so unfit that the State should step in to protect the interests of the child. The question of unfitness was the primary question before the trial court and could not be decided solely by determining that the best interest of the child precludes a change of custody at this time. *In re Jones* (1st Dist. 1975), 34 Ill. App. 3d 603, 340 N.E.2d 269.

On review, the judgment of the trial court should be affirmed if the

---

[1] Ill. Rev. Stat. 1975, ch. 37, par. 705—9(2):

"(2) If the petition prays and the court finds that it is in the best interests of the minor that a guardian of the person be appointed and authorized to consent to the adoption of the minor, the court with the consent of the parents, if living, *or after finding a non-consenting parent to be unfit* as provided in this Section, may empower the guardian of the person of the minor, in the order appointing him as such guardian, to appear in court where any proceedings for the adoption of the minor may at any time be pending and to consent to the adoption." (Emphasis added.)

evidence in the record supports the judgment, even though the reasons given by the trial court were erroneous. Thus, we must consider whether the evidence here clearly and convincingly established the natural mother's unfitness. According to the testimony of Mr. Wagner, the marriage counselor, and Mrs. Castillo, the caseworker, the mother agreed that her child should be left with the foster parents from 1968 until March of 1972, primarily because her husband was mentally unstable, prone to violence, and periodically denied paternity, and secondarily, for financial reasons. The mother denied that she was ever willing to consent to adoption during this period, but admitted that she had not sought custody.

It is undisputed that the mother maintained regular contact with the Department during 1968 and 1969, and inexplicably, that no caseworker was assigned to this case from August of 1969 until April, 1971. When Mrs. Castillo became responsible for the case in 1971, the mother asked for visitation rights and was told there would be no visits. She continued to inquire about the health and welfare of the child during her regular interviews with Mrs. Castillo, but apparently agreed to permit her child to be adopted until her "change of heart" which occurred in March of 1972.

Thereafter the mother retained counsel to oppose the adoption, and eventually filed a suit for divorce, but during the period from March of 1972 to December, 1974, she made no request for a hearing on the pending petition and filed no petition to regain custody.

I think it plain that the mother's marital problems were the cause of her inconsistent attitude toward her child. If we believe the testimony of Mr. Wagner and Mrs. Castillo, and disbelieve the mother, we can infer that the mother placed her marriage and other children ahead of Melody, at least until she separated from her husband in October of 1972. Obviously there are long periods where no interest in the child was shown except for the mother's uncorroborated testimony of numerous phone calls to the Gordons and to the Department. Considering all of the evidence, I agree with the majority decision that the judgment of the trial court was not against the manifest weight of the evidence, and that the judgment should be affirmed.

Mr. JUSTICE BARRY, dissenting:

I agree with Justice Stengel that in proceedings involving efforts to terminate residual parental rights, the matter of whether adoption is in the best interests of an infant ward is not material until the unfitness of a nonconsenting parent has been resolved as a separate and distinctly separate *prior* issue. By someone's standards, it is always possible to find a better home for a child than the one Providence has bestowed. For that reason alone, natural relationships are protected by law unless the

unfitness of the parents is demonstrated by clear and convincing proof. That quantum is not established by a showing that the Department has nurtured parent-child attachments between an infant ward and a foster home by isolating a child in its legal custody from contacts with his parents. (*In re Taylor*, 30 Ill. App. 3d 906, 334 N.E.2d 194 (1st Dist. 1975).) As the circuit judge expressed it, evidence of efforts by the Department to encourage such permanent attachments so that out of a human reluctance for disrupting an infant's life courts will feel compelled to adjudicate in favor of a Department policy of effecting adoptions must be vigorously loathed by judicial disfavor.

It is clear that the circuit court erred here in deciding that out of considerations for the best interests of the infant it was compelled to find the natural mother unfit. It is clear, also, as Justice Stengel notes, that there is conflicting proof justifying different inferences on the matter of whether, considering her circumstances, Mrs. Hrusosky demonstrated sufficient parental concern and interest. But "it is her efforts to carry out her parental responsibilities, rather than their successes, which should be considered in determining the correctness of a finding of unfitness \* \* \*." (*In re Taylor*.) I disagree, however, that it is the function of this court to weigh the conflicting relevant proof and to elect the appropriate inferences, and I am not persuaded that this record so overwhelmingly favors the Department that no judgment in favor of Mrs. Hrusosky could ever stand. Since the circuit court gave no consideration to the relevant proof, but erroneously based its decision as to the mother's unfitness solely on consideration of the child's best interests, a remandment is necessary in my view.

I would vacate the judgment of the circuit court and remand the cause with specific directions to reconsider the proof heretofore made in accordance with the law as set forth in *In re Taylor*.