*In re* TINA LOVE *et al.*, Minors.—(THE DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Petitioner-Appellee, *v.* DAVID LOVE *et al.*, Respondents-Appellants.)

Third District   No. 76-510

Opinion filed August 2, 1977.

Bruce Zumstein, of Codo and Bonds, of Joliet, for appellants.

Edward Petka, State's Attorney, of Joliet (Thomas Cowgill, Assistant State's Attorney, of counsel), for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from an order of the circuit court of Will County which found David Love and Deborah Love, the respondents, to be unfit parents of the minor children Tina Love and Anthony Love. The trial court's order further authorized a guardian to consent to the adoption of the two children, namely, Tina and Anthony.

The underlying facts from which appeal stems are as follows. The respondents were married in November 1972, at which time David was 19 years old and Deborah was 20 years old. From this marriage the child Tina Marie was born on July 25, 1973, the child Anthony Michael was born on August 1, 1974, and Baby Boy (James) Love on October 6, 1975.

On November 3, 1974, the respondent David returning home from work found his son Anthony with an enlarged and inflated stomach, so he and the child Tina were taken to the hospital in Joliet. The child Anthony was admitted for malnutrition, dehydration and severe diaper rash. Hospital personnel called the Will County Sheriff and the Illinois Department of Children and Family Services, hereinafter referred to as

the Department. The Department took custody of both the children and on November 4, 1974, had a petition filed in court which charged that the minors Anthony and Tina were neglected pursuant to the provisions of the Juvenile Court Act. After an adjudicatory hearing the trial court on March 26, 1975, found the children to be neglected and ordered that they be wards of the court with the Department as their guardian.

After the respondents had lost custody of their children they arranged for periodic visitation rights with them and also received therapeutic and diagnostic counseling from the Will County Mental Health Clinic. The respondents also attended meetings of a group known as Parents Anonymous, which is a private organization comprised of child-abusing parents. The respondent father lost his employment for a period of time and he and his wife were compelled to live in a number of different locations.

At the time the children Anthony and Tina were made wards of the court their mother, the respondent Deborah, was pregnant. She gave birth to a third child, Baby Boy Love (to be named James Antonio Love) on October 6, 1975. On the day following the birth the Department caused a supplemental petition to be filed, without service of process on any of the parties, in which it alleged that the child James was also neglected and should be made a ward of the court. An emergency order for temporary guardianship was signed by the trial court on October 7, 1975, and subsequently the trial court refused to release the child James from custody of the Department when the issue of lack of jurisdiction was raised.

The Department prior to the birth of the child James filed a supplemental petition in which it was prayed that as to the minors Anthony and Tina the respondents be declared unfit parents and that a guardian with the right to consent to their adoption be appointed. This supplemental petition was later amended to include the recently born child James. Pursuant to a bill of particulars requested by the respondents, the grounds for unfitness asserted under the Adoption Act were (a) failure to maintain a reasonable degree of interest, concern or responsibility as to the minors' welfare, (b) substantial, continuous and repeated neglect of the minors, and (c) other neglect of or misconduct toward the minors.

Hearing on the supplemental petition was had on November 19 and 20, 1975, and the following testimony was adduced.

Sergeant Peter Haas of the Will County sheriff's office, testified that he interviewed the respondents on the night the children Anthony and Tina were taken from them. The respondent father informed him that he usually arrived home from work at 6:30 in the evening and departed at 6 a.m. the following morning and that during this span of time the children

were never fed by him or his wife. The respondent mother informed the officer that she did not feed the children because sometimes there was no food available, that she did not like to feed them and that on other occasions she withheld food from the children as a mode of punishment.

Sister Jane Janthor, a caseworker with the Department, testified that the children were in "fair condition" when she had her first contact with them in December 1974, that she saw the respondent parents at supervised visits with the children on many occasions, and that the visits were as frequent as once a week. She further testified that the respondent mother informed her that her husband at various times had physically abused the children and in fact, the respondent father did not really care about the children or want them back.

It was the testimony of the Sister that the mother was unable to feed the child Anthony and in spite of the many visits between the children and their parents a normal and calm relationship never developed between them as is the usual case, even when children had been abused by their parents.

The Sister stated that the Department has available a homemaker program, where a third party would be placed in a home for the purpose of instructing and assisting parents in the housekeeping, cooking and child care, but that this program was not tried since it was the opinion of the Department that it would be of no benefit to the respondents.

The testimony of Dr. Lawrence Egel of the Will County Mental Health Clinic was as follows. He saw the respondents when they were referred to him by the Department and they both received psychological testing. The examination of the respondent father indicated that he had a below normal I.Q. of less than 85 and a personality that was highly paranoid. The examination of the respondent mother disclosed an I.Q. on the low end of a borderline range that is indicative of some mental retardation. It was the further testimony of Dr. Egel that based upon his examinations he did not believe that the respondents would be able to adequately and sufficiently perform the functions of parenthood and that there was no program of rehabilitation available anywhere in the country that could bring the respondents to the point of properly performing the roles of parenthood.

Michael Tymowicz, a social worker for the Will County Mental Health Clinic, testified that he counseled with the respondents on a number of occasions but they were guarded and tended to isolate themselves and therefore little was accomplished. He stated that he observed no improvement or change of behavior as to the respondents during the course of his interviews with them.

Witnesses for the defense were:

The respondent father David Love, who admitted that he did not feed,

bathe or clothe the children in a proper manner and that his failure to do a good job as a parent resulted from inexperience, a lack of training and immaturity. He admitted hitting both Anthony and Tina because they cried a lot and after a hard day at work he didn't realize what he was doing. He admitted that the child Anthony should have been taken away from him and his wife, but that the child Tina should not have been taken away because there was nothing wrong with her. He testified that he attended therapy sessions at the Will County Mental Health Center and also attended meetings of the organization known as Parents Anonymous. He felt that he had benefitted from attending these sessions, but when asked how, his answers were vague and could be categorized as being almost nonresponsive. He testified that he and his wife had furnished an apartment and desired the return of the children.

The witness respondent Deborah Love, the mother of the children, in her testimony corroborated much of her husband's testimony. Her testimony disclosed that she was an eighth grade graduate from special education classes in Chicago and had been to the Will County Sheltered Care Workshop for employment. Her only employment experience prior to marriage was as an employee at a truck stop. She stated that she had no difficulty in taking care of Tina before Anthony was born, but it became much more difficult when two children were in the home. She stated that no one had showed her how to take care of children and that when she became "run down" she would take out her aggravations on the children. At times she would become so upset with the children's crying that she would put them in a bedroom and shut the door. She denied that she ever intentionally withheld food from the children, but that she would put a three-month-old baby in a crib with a bottle and never check on him again. She admitted that a babysitter had complained of the fact that there was no food in her home and that the babysitter provided food for the children. She also testified that she had attended various therapy and counseling sessions and that she believes that she is a changed person. She testified that when taken from her home the child Tina "might have been a little underweight" but her ribs were not showing and she was not skinny. Tina was one year old when taken from her and while she could not walk, she could crawl and tried to stand. It was the further testimony of the respondent mother that she wanted the children returned, that a return of their custody to her and her husband would help their marriage, and that she would accept supervision in family environment and cooperate with the Department.

For the State in rebuttal:

Royal Dean Tassel, the foster parent of the child Tina, testified that when the child came to his home at the age of one year, she was extremely

skinny, had a protruding stomach, and that she was unable to crawl or feed herself.

We will set forth other facts derived from the testimony of witnesses and matters of procedure as they become pertinent to the issues raised in this appeal.

The first issue assigned by the respondents as error is that the trial court's order terminating their parental rights and authorizing a guardian to consent to an adoption should be reversed since the finding of unfitness of the respondents as parents was contrary to the manifest weight of the evidence.

■■■ We agree with the respondents that under our Adoption Act the unfitness of parents must be proven by clear and convincing evidence. (*In re Hrusosky* (1976), 39 Ill. App. 3d 954, 351 N.E.2d 386; also *Kubisz v. Johnson* (1975), 29 Ill. App. 3d 381, 329 N.E.2d 815.) In essence the first issue raised by the respondents is whether they were found to be unfit parents by clear and convincing evidence. In finding the respondents unfit the trial court relied on section 9.1—1(D((b) of the Adoption Act (Ill. Rev. Stat. 1975, ch. 4, par. 9.1—1(D)(b)), which provides that one of the grounds for unfitness is a failure to maintain a reasonable degree of interest, concern, or responsibility as to a child's welfare. In examining the testimony adduced in the hearing before the trial court it is clear that such evidence supports a finding that prior to the removal of the minors Anthony and Tina from their custody, the respondents almost totally failed to maintain a reasonable degree of interest in and concern for their children. The children were rapidly approaching a critical and dangerous condition as far as their health was concerned because neither of the respondents fed them with any regularity. Frequently there was no food in the home of the respondents, even though the father was employed. The children were isolated and ignored if they cried. On occasion they were physically abused. These findings are clearly and convincingly supported by the evidence.

After the minors Anthony and Tina were removed from the custody of the respondents we determine from the evidence that the respondents attended meetings of an organization known as Parents Anonymous and visited the children when they were in the custody of the Illinois Department of Children and Family Services. The respondents underwent a psychological testing by the Will County Mental Health Clinic and made an attempt to receive counseling from a social worker from the same clinic. If visiting the children, seeking counseling and psychiatric assistance are per se sufficient to fulfill the requirements that parents maintain a reasonable degree of interest, concern and responsibility for their children, then the respondents in the instant case

have met and surmounted that requirement. We do not, however, believe that such is the law in our State. In the instant case we have respondents who, after they lost custody of their children, made some determined albeit futile efforts to rehabilitate themselves as parents. The efforts of the respondents to acquire the training and traits of proper parenthood were unavailing. As we have previously set forth, the testimony of Sister Janthor was that the respondents were unable to develop a normal relationship with their children when they visited them. It was also this witness's testimony that the respondent mother related to her that their father did not really care about the children and did not want them back. A caseworker for the Department testified that the respondents were guarded and so isolated themselves that little could be done to assist them. The testimony of Dr. Egel was that neither of the respondents had the mental or emotional equipment to perform the role of a parent and that there was no program currently available which could rehabilitate them so they could perform such a role. The testimony of the respondents demonstrates that they did not benefit from the counseling they received. They failed to give a single concrete answer as to what they had learned from any program they had attended or counseling they received after they lost custody of their children. It is evident from the record that, pitiful as it may be, the respondents are not mentally equipped to maintain a reasonable degree of interest, concern or responsibility to their children's welfare. We can only conclude that by clear and convincing evidence the State met the burden of proving the respondents to be unfit parents.

■■ The respondents next contend that testimony concerning a parent's potential capacity to adequately care for children is irrelevant and constitutes error. This contention is directed to the testimony of Dr. Egel which we have previously set forth and which in substance was that the respondents had limited intelligence and no program of rehabilitation could enable them to adequately carry out the parental functions. We cannot agree with the respondents in regard to this issue. (*In re Ladewig* (1975), 34 Ill. App. 3d 393, 340 N.E.2d 150.) In *Ladewig* a court appointed psychiatrist reported that the respondent mother was not at that time and would not be in the foreseeable future capable of providing sufficient mothering for her child. The trial court in the case of *Ladewig* found the mother unfit and the reviewing court affirmed. We believe that in the instant case we have a situation like that in *Ladewig* as far as the testimony of Dr. Egel is concerned and that such testimony is relevant and did not constitute error.

Lastly, the respondents assign as error that the trial court made his determination as to their unfitness upon private information and therefore they were denied due process of law.

In raising this issue the respondents are concerned with private correspondence received by the trial judge and in which the judge was advised as to the situation of the respondent parents and their relationship with their minor children. This correspondence was filed by the clerk of the court and appears in the record of this case. We are aware of the fact that such correspondence constitutes written matter given to a judge which is not subject to rulings as to admissibility or cross-examination. The respondents conclude that the trial court considered the correspondence as evidence and relied upon it in arriving at his findings. In examining the record we cannot pinpoint anything of any nature that the trial judge considered which was contained in the two letters received from the Illinois Department of Children and Family Services subsequent to the court hearing and prior to its ruling which would indicate that such correspondence influenced the court's decision. The record clearly reflects that the trial court had previously ruled as clearly inadmissible certain status reports in the form of correspondence received from the Department.

■■ In bench trials, the court is presumed to have relied only upon competent evidence in making its determination. (*People v. Clarke* (1971), 50 Ill. 2d 104, 277 N.E.2d 866.) This presumption can be rebutted by a clear showing to the contrary. (*People v. Wallenberg* (1962), 24 Ill. 2d 350, 181 N.E.2d 143.) However, more than a mere suspicion that the trial court considered incompetent evidence must be shown to rebut the presumption to the contrary, where the accused's guilt is otherwise manifestly shown. *People v. Delno* (1966), 35 Ill. 2d 159, 220 N.E.2d 190.

In the instant case the trial court heard testimony as to the unfitness of the respondents on November 19 and 20, 1975, and then took its ruling under advisement until August 9, 1976. On this latter date when the court made its ruling the trial judge stated:

"I have given this a lot of thought and this has been under advisement for some period of time. The reason I put it under advisement is that I wanted to see if there had been any changes or improvements. I am going to rule as to the two older children are concerned that I am going to put them out for adoption."

■■ From this statement the respondents arrive at the conclusion that the judge considered evidence not presented during the course of the hearing in order to arrive at his finding. We do not find such a conclusion to be so crystal clear. Any supposition that the judge's comments indicate he was influenced by reports is seriously discredited by the fact that he made his decision five months after the last report was filed.

In our opinion the respondents have failed to rebut the presumption that the trial judge relied only upon competent evidence in arriving at its decision.

It should be noted that we have rendered no opinion concerning the minor child, James Love, since this court has previously, on motion of the People, dismissed the appeal in respect to said minor.

For the reasons set forth the judgment of the circuit court of Will County as to the minors Tina Love and Anthony Love is affirmed.

Affirmed.

STENGEL, P. J., and BARRY, J., concur.