NATIONAL INDUSTRIES INCORPORATED, Plaintiff-Appellee, *v.* STANLEY HOWARD, JR., d/b/a Builders Ready Made Products, Defendant-Appellant.

Second District   No. 75-539

Opinion filed November 9, 1977.

David Lincoln Ader, of Chicago, for appellant.

Franks & Wylde, of Marengo, for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The defendant, Stanley Howard, Jr., appeals from an order which denied his petition to vacate a default judgment pursuant to section 72 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 72) following an evidentiary hearing.

Judgment by default in the amount of $7,108.64 was entered against defendant individually on the unsworn complaint which charged that defendant, doing business as Builders Ready Made Products (BRMP), had previously stated an account for the debt. Defendant was served on March 10, 1975. Default was entered on July 11, 1975, the order reciting that defendant had failed to appear or answer and that proofs had been heard.

On September 10, 1975, a citation to discover assets was served upon the defendant. On September 17, 1975, defendant filed the petition to vacate. He alleges that Builders Ready Made Products at all relevant times was an Illinois corporation, and that he is not and was not an officer, stockholder or director of the corporation. He also alleges that when he received summons he immediately telephoned the attorney for the plaintiff and told him the foregoing facts and also told him that a Mr. Sam Bonanno was the "owner" of BRMP. Defendant further alleges that the attorney said that he would have the action dismissed as to defendant and that therefore defendant did nothing further until he became aware on September 11, 1975 (apparently as a result of the service of a citation to discover assets) that the judgment had been entered against him personally, and then immediately contacted his attorney to prepare the petition to vacate.

On September 22, 1975, plaintiff's counsel notified defendant that he would appear on October 3 to present a counteraffidavit and to argue the petition to vacate. In his affidavit the attorney states that he received a call "some months ago" from defendant who said "that he was not the owner of the company but that he was only an Officer, and that the principal owner was a man named Sam Bonanno." Plaintiff's counsel further states that he "did not offer to, promise to, or in any way do anything to lead Mr. Howard to believe that he would be dismissed from the law suit."

At the evidentiary hearing held on October 3 the trial court refused to permit Howard's attorney to raise any matter except the conversation with plaintiff's attorney and any action defendant took after the summons was served upon him. Howard testified substantially in support of the allegations of his petition and affidavit. The court refused to permit questions by any of the parties as to whether defendant was a co-owner with Sam Bonanno of BRMP or whether the complaint was properly brought against defendant as an individual. Principally by his own questioning the trial judge elicited testimony from defendant to show that he worked for his father in a business similar to BRMP and was himself

interested in a corporation that was engaged in a related business. The questioning developed defendant's experience as a business man in dealing with attorneys and with litigation.

Plaintiff's counsel was then sworn as a witness. Defendant's counsel objected that it was improper for an attorney who was counsel for one of the parties to be a witness in the same proceeding. The court overruled the objection. In so doing the court noted that he "frowns" on the procedure but was exercising his discretion in what he considered to be the unusual circumstance that petitioner wanted to be heard on this particular day.

Plaintiff's counsel then testified that he received a telephone call in March 1975 from a man who identified himself as Howard; that Howard said he did not own the company and that a Mr. Sam Bonanno did; and that, upon request, Howard informed him of Bonanno's address. The witness stated that he thanked him for the information and that there was no other conversation.

Following the testimony and arguments the trial judge stated that he could not "accept the fact" that defendant either heard the statement that counsel would dismiss the case as to him "or even if he had heard it, could have accepted that." He therefore denied the motion under section 72.

Defendant contends that the court erred in restricting the scope of the section 72 hearing to the contents and effect of the telephone conversation between the defendant and the lawyer for plaintiff, thereby limiting the case to the issue of due diligence and barring inquiry into the unfair and unconscionable aspects of the entry of a default judgment against an individual on an ostensible corporate obligation. He also contends that the finding of the lack of due diligence is contrary to the manifest weight of the evidence.

■■■ The general standards which govern section 72 relief are well established. The petition "invokes the equitable powers of the court, as justice and fairness require, to the end that one may not enforce a default judgment attended by unfair, unjust or unconscionable circumstances." (*Elfman v. Evanston Bus Co.*, 27 Ill. 2d 609, 613 (1963).) Although section 72 was not designed to relieve a party of the consequences of his own mistake or negligence either before or after the entry of a default judgment (*Ulrich v. Glyptis*, 79 Ill. App. 2d 447, 454 (1967)), relief will be forthcoming when a petitioner can show that he has been reasonably diligent in protecting his rights and, in addition, that he has a meritorious defense. *Graf's Beverages of Illinois, Inc. v. Tauber*, 50 Ill. App. 3d 1047, 1051 (1977).

Due diligence requires that a section 72 petitioner have a reasonable excuse for failing to act within the appropriate time. The concept of due diligence is a relative one so that the reasonableness of the excuse offered

by a petitioner will be judged in light of all equitable considerations, including the conduct of the litigants and their attorneys, both before and after the entry of the default judgment. (*Hogan & Farwell, Inc. v. Meitz,* 45 Ill. App. 3d 216, 222 (1976). See also *Manny Cab Co. v. McNeil Teaming Co.,* 28 Ill. App. 3d 1014, 1019 (1975).) Thus, a court must examine all attendant circumstances to determine if a petitioner's diligence is sufficient to warrant relief. *Gary Acceptance Corp. v. Napilillo,* 86 Ill. App. 2d 257, 262 (1967).

■■ Here the defendant alleges that the claim on which plaintiff seeks to hold him personally liable is, if it exists at all, the obligation of a corporation and that, in any case, he is a stranger to both the corporation and the debt. These allegations clearly state a meritorious defense. (*Compare Graf's Beverages of Ill., Inc. v. Tauber,* at 1051-52.) In fact in his brief plaintiff concedes that these allegations set forth a possible meritorious defense and, further, plaintiff's counteraffidavit in opposition to the section 72 petition did not controvert these allegations, with the result that they must be taken as true. (See *Storm v. Ben-Lee Motors Service Co.,* 11 Ill. App. 3d 516, 519 (1973).) This, however, did not permit the trial court to assume that only the issue of whether defendant acted with due diligence was involved in the court's exercise of discretion. The judge was required to examine the question of diligence relative to all of the attendant circumstances including the conduct of both parties and their attorneys. The court could, ·of course, as a matter of credibility decide that plaintiff's counsel's version of the telephone conversation with defendant was the more believable.

Assuming the correctness of the court's conclusion that either no promise to drop the suit was made or that, even if made, the defendant could not have relied upon it, the conduct of defendant would amount to a relatively weak showing of due diligence. It might only be said that, contrary to the conduct of the defendant in *Johnson-Olson Floor Coverings, Inc. v. Branthaver,* 94 Ill. App. 2d 394 (1968), he did *something,* he called the opposing attorney to tell him that he was not suing the right party and gave him the name of the person defendant claimed was the real debtor and advised him of the corporate entity. However, if other conceivable circumstances had not been ruled out of consideration even this rather minimal showing of diligence might have been sufficient to prevent a dismissal of the section 72 petition. As stated in *Gary Acceptance Corp. v. Napilillo,* 86 Ill. App. 2d 257, 262:

> "When it is clear from all the circumstances that a party has procured an unconscionable advantage through the extraordinary use of a court process, the court will excuse the defaulting party for what might otherwise be considered a lack of diligence."

■■ In this case there are several indications of unconscionable and

unfair conduct on plaintiff's part. At the time the default judgment was taken plaintiff's attorney was on notice that the claim against defendant might be spurious because the obligation was that of a corporation yet he testified that he did not check into the corporate status of BRMP and apparently did not advise the trial judge at the time the judgment was entered of these circumstances. A failure to bring relevant matters to the attention of the trial court before a judgment is entered has been said to remove the "full onus" of the due diligence requirement from a petitioner. *In re Adoption of Barker*, 37 Ill. App. 3d 721, 724-25 (1976). See also *Gary Acceptance Corp. v. Napilillo*, 86 Ill. App. 2d 257 (1967). See also *George F. Mueller & Sons, Inc. v. Ostrowski*, 19 Ill. App. 3d 973, 979 (1974).

■■ In addition, the plaintiff caused the defendant to be served on March 10, 1975, took the default judgment on July 11, 1975, and then waited until September 10, 1975 to levy on the judgment. The failure to levy execution on a default judgment or to inform the defendant of the judgment for more than 30 days after its entry has been said to cast a "cloud" on the proceedings. (*Elfman v. Evanston Bus. Co.*, 27 Ill. 2d at 609, 614.) While this factor alone has been held insufficient to justify relaxation of the due diligence standard, it is a factor which in combination with other circumstances may cause the standard to be lowered. (See *Limar-Pinehurst, Inc. v. Welter*, 38 Ill. App. 3d 800, 804 (1976). See also *Stehman v. Reichhold Chemicals, Inc.*, 57 Ill. App. 2d 40, 49 (1965).) At the very least the trial court should have permitted defendant's counsel to explore the good faith or lack of good faith on the part of plaintiff and his attorney to determine if the circumstances warranted a relaxation of defendant's due diligence obligation.

■■ We therefore conclude that the trial court erred in denying section 72 relief upon the restricted record which he imposed upon the parties. We do not rule on the question of whether the trial court's limited findings thus were against the manifest weight of the evidence. In this connection we do not contemplate that the issue of an attorney testifying in behalf of his client will arise in a new hearing and therefore do not rule on the possible effect of this practice on the weight to be given his testimony. We reverse the judgment and remand the cause to the trial court with directions to conduct a section 72 hearing in accordance with the views which we have expressed.

Reversed and remanded with directions.

RECHENMACHER, P. J., and NASH, J., concur.