RHONDA K. EBERSOLE, Petitioner-Appellee, v. BRADLEY A. EBERSOLE, Respondent-Appellant.

Third District   No. 3—87—0621

Opinion filed July 5, 1988.

Walter C. Kilgus, of Nelson, Kilgus, Richey & Tusek, of Morrison, for appellant.

John Olivero, of Peru, for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

The respondent husband, Bradley A. Ebersole, appeals from the trial court's order vacating his dissolution property settlement with the petitioner wife, Rhonda K. Ebersole. We affirm.

The husband and wife were married in 1983 when the wife was 17 and the husband was 20 years old. Their son was born shortly thereafter. During the approximately three-year marriage, the husband worked buying and raising livestock. The wife was minimally employed or unemployed.

In 1985 the parties purchased the marital residence on contract, making a $25,000 down payment. Also during the marriage the husband bought a 1984 truck, a cattle trailer for his work, a stove and a dryer, and a 1984 automobile. According to the wife, those purchases of personal property were in cash.

In July of 1986, the wife filed for dissolution and the court awarded temporary child custody to the husband and $55 weekly maintenance to the wife. In August of 1986, the wife's counsel withdrew, stating that the wife had not remained in close enough communication. The wife sought but did not secure alternate counsel.

On September 3, 1986, the wife went to the office of the husband's lawyer, where the parties executed their original settlement agreement. The agreement provided for joint custody of the child. It also provided for the wife to receive $5,000 cash, an automobile, a microwave, a television, assorted other personal property, plus 60 days

of maintenance at the rate of $55 weekly. The husband was awarded the marital residence, the truck, the trailer, a lawnmower, VCR, washer, dryer, freezer, stove, refrigerator, and assorted personal property. The husband was also ordered to assume all marital debts. While the wife was alone to sign in the lawyer's office, the lawyer advised her that she might not want to go to the September 8 court hearing on the agreement, as it would be emotionally upsetting to her.

The husband and his attorney attended the September 8 hearing; the wife did not attend. The court continued the proceedings to September 15, as the settlement agreement included no joint-parenting agreement to accompany the provision for joint custody. The court ordered the wife to appear at the September 15 continuance.

On September 15, the husband's lawyer gave the wife her first notice of the court's opinion that the parties needed a joint-parenting agreement. According to the wife, she understood from the lawyer that if the September 3 agreement was amended by crossing out the joint custody provision, the judge would accept the agreement and her resulting rights with the child would be unchanged except for minor details. The wife agreed to deletion of the joint custody language. The agreement, thus, provided for custody in the husband. There was no other change.

In court September 15, the judge explained to the wife that he had questioned the joint custody provision as it was meaningless without specific parenting agreements. Thereafter, following the court's questions the wife stated that she was agreeing to give the husband custody and that she realized it might be difficult to recover custody if she later decided she wanted to do so.

On March 4, 1987, the wife filed her instant petition under section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401). The petition sought vacation of the property settlement agreement. After a hearing, the court granted the petition. To support its order it found clear and convincing evidence that the agreement was tainted by fraud or duress and that the wife was duly diligent in bringing the petition to vacate.

The court found that the agreement was unfair for the following reasons. On the issue of child custody, the court found that there was no meeting of the minds, as the husband intended to retain physical custody and the wife thought that she would have the same kind of extensive child contact as she had had before the agreement. On the issue of property division, the court found that the husband had received a disproportionate share. The court referred specifically to the parties' livestock, washer and dryer, and farm truck. The court also

noted that it considered the wife's $5,000 settlement payment insufficient considering the parties' equity of over $25,000 in the marital residence.

In considering the issue of duress, the court noted that the husband's attorney drafted the agreement. It also noted that at the time of the proceedings the wife was 20 years old, without family financial support, and without knowledge of the value of the husband's assets. Additionally, the court found that in July of 1986 and previously, the husband had battered the wife. Also, the court observed that in June the husband had closed the parties' checking account and left the wife penniless. Further, it observed that the wife had diligently, albeit unsuccessfully, sought legal assistance. The court found that the husband had told the wife that if she did not like the agreement she should go to court and she would end up with nothing, not even the child. It also noted the husband's attorney's comment to the wife that perhaps she should not attend the September 8 court hearing, as it would be emotionally upsetting to her.

On the question of diligence in bringing the petition, the court found that the wife had been primarily concerned about child custody, not with the property settlement, and that she had brought her petition within a reasonable time of her awareness that problems were developing with custody.

■ A petition for relief under section 2—1401 of the Code of Civil Procedure must be filed within two years of the relevant order or judgment and must be supported by a meritorious claim or defense in the original action plus due diligence both in the original action and in the section 2—1401 proceedings. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401; *Ridgway v. Ridgway* (1986), 146 Ill. App. 3d 463, 497 N.E.2d 126.) The trial court's decision on a section 2—1401 petition may be disturbed only if it was an abuse of discretion. *Ridgway*, 146 Ill. App. 3d 463.

■ While property settlement agreements are generally favored, under a section 2—1401 petition such an agreement can be vacated if it is unconscionable or if it results from fraud or coercion by either party. (*In re Marriage of Carlson* (1981), 101 Ill. App. 3d 924, 428 N.E.2d 1005.) Unconscionable bilateral agreements include those where the contract terms unreasonably favor one of the parties and the other party lacked a meaningful choice. (*Carlson*, 101 Ill. App. 3d at 930.) Fraud may be established where one party induced another party's detrimental reliance by knowing and material misrepresentation (*Ridgway v. Ridgway* (1986), 146 Ill. App. 3d 463, 497 N.E.2d 126), or where the court was led to mistakenly believe that an agree-

ment had been reached (*In re Marriage of Beck* (1980), 83 Ill. App. 3d 976, 404 N.E.2d 972).

The record strongly supports the court's conclusion that the property terms of the agreement were not fair and reasonable and that the wife lacked a meaningful choice in agreeing. While the agreement provided each party with some valuable personal property, the specific division of personalty was clearly disproportionate. While it awarded each party one motor vehicle, the wife's additional award of a microwave and a television was minimal compared to the husband's additional explicit award of a livestock trailer, lawnmower, VCR, washer, dryer, freezer, stove and refrigerator. We note, furthermore, that the agreement apparently mischaracterized an important segment of the parties' estate and did so to the wife's detriment. Under the agreement the husband apparently retained the parties' livestock as his sole property. Additionally, in the marital property division, the husband was allocated the washer and dryer although they apparently had been a gift from the husband to the wife.

While the division of personalty was independently inequitable and suspect considering the wife's weak bargaining position, the settlement's further property terms make the settlement even less balanced. The remainder of the settlement provided the wife with a cash award of $5,000 and the husband with the at least $25,000 equity in the parties' marital residence. The down payment for purchase of that marital property was made from the parties' joint checking account; the court suggested no finding that the down payment was made from the husband's nonmarital funds. Further, there is no evidence that the husband assumed a debt obligation to counterbalance the agreement's unreasonably favorable distribution to him.

Considering the evidence of the disproportionate property division, the husband's role in designing the settlement and creating the vulnerable wife's misconception of the nature of the custody award, the wife's diligent but unsuccessful efforts to secure substitute counsel before the dissolution was final, the parties' failure to reach actual agreement on child custody, and the wife's timely efforts to seek relief after the dissolution, we find no abuse of discretion in the court's order vacating the property settlement agreement.

Accordingly, the judgment of the circuit court of Whiteside County is affirmed.

Affirmed.

STOUDER, P.J., and BARRY, J., concur.