*In re* MARRIAGE OF JOHN C. HOPPE, Petitioner-Appellee, and CHRISTINA L. HOPPE, Respondent-Appellant.

First District (6th Division)   No. 1—90—0669

Opinion filed April 19, 1991.—Rehearing denied June 27, 1991.

272

Pretzel & Stouffer, Chartered, of Chicago (Ronald S. Ladden, Robert Marc Chemers, and Robert J. Franco, of counsel), for appellant.

Jenner & Block, of Chicago (James H. Feldman and James D. Noseda, of counsel), for appellee.

JUSTICE LaPORTA delivered the opinion of the court:

This appeal arises from the denial of a request for relief from a final judgment pursuant to section 2—1401 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1401).

Petitioner, J.C.H. (husband), sought a dissolution of marriage from respondent, C.L.H. (wife), and on March 8, 1988, the trial court entered a judgment for dissolution of the marriage which incorporated a property settlement agreement and a joint parenting agreement between the parties. The parties also simultaneously entered into a supplemental property settlement agreement which was not incorporated into the judgment. These agreements included a determination that the parties were to maintain joint custody of the two minor children, ages five and two at the time of the dissolution of the marriage, and provided for maintenance, child support, and distribution of the marital estate. The parties subsequently entered into a supplemental joint parenting agreement.

On October 20, 1989, wife sought to vacate the judgment under section 2—1401, asserting that she had agreed to the terms of the marital settlement agreements under duress and that the terms of those agreements were unconscionable. Husband filed a motion to dismiss the section 2—1401 petition which was granted by the trial court. Wife appeals the trial court's dismissal of her motion to vacate the judgment.

The record reveals that husband, a citizen of the United States, and wife, a subject of the United Kingdom, were married in England on April 12, 1983. The parties had two children during the marriage, Thomas William, born July 14, 1983, and Julia Catherine, born April 19, 1986. The parties separated on April 15, 1987, when husband removed himself from the marital residence. On April 24, 1987, husband commenced an action for dissolution of the marriage, alleging as grounds extreme and repeated mental cruelty by wife. The trial court appointed counsel for the minor children, and both husband and wife were represented by counsel. The parties exchanged at least eight drafts of proposed settlement agreements before the judgment for dissolution was finally entered.

On March 8, 1988, the parties appeared before the trial court and presented a property settlement agreement, a joint parenting agreement, and a supplemental property settlement agreement, all three of which were dated March 7, 1988. The parties agreed to an amendment of the petition to assert irreconcilable differences as grounds for dissolution of the marriage and requested that the court dissolve the marriage and approve the joint parenting and property settlement agreements *instanter.*

At the hearing, husband, a licensed attorney, testified that he understood and voluntarily agreed to the terms of the property settlement, supplemental property settlement, and joint parenting agreements before the court. Husband also testified that he intended that wife and the children be allowed to spend some time with her family in England, and he understood that such arrangements would impose upon some of his parenting time with the minor children. He stated further that he understood that it was wife's intention to reside in Illinois, and that this was the "major basis" for the settlement.

Husband also testified that at the time of the hearing, the marital estate consisted of assets totalling approximately $200,000 and liabilities totalling approximately $68,000. He stated further that his net income, exclusive of bonus, amounted to $7,344 per month and that he earned an annual net bonus of $14,000 to $16,500. Husband also testified that he was obligated to pay child support from a prior marriage in the amount of $900 per month and that he had assumed the marital debts totalling $68,000, requiring a monthly debt service of approximately $625.

Wife, who had been trained as a paralegal, testified that she understood the terms of the property settlement and joint parenting agreements and that she voluntarily agreed to them. She also stated, however, that she agreed to those terms because they were in the

best interests of the children and stated that the terms of these agreements were not in her best interests.

The parties agreed that the supplemental property settlement agreement was not to be attached to or incorporated in the judgment and would be enforceable only as a contract. At the conclusion of the hearing, the trial court entered an order dissolving the marriage of the parties and approved all of the agreements of the parties, finding them to be fair and equitable. The judgment for dissolution incorporated only the property settlement and joint parenting agreements, but not the supplemental property settlement agreement, in accordance with the intentions of the parties.

The property settlement agreement provided, *inter alia*, that husband was obligated to pay unallocated maintenance and child support in the sum of $2,500 per month through and including the month of February 1991, in addition to the sum of $2,000 in both 1989 and 1990, payable by January 31 of each year. After February 1991, husband was obligated to pay child support in the sum of $1,400 per month, and the payment of maintenance ceased.

Husband was also obligated to pay wife an additional $20,000 as maintenance, of which $10,000 was payable upon dissolution of the marriage, $5,000 payable by May 10, 1988, and $5,000 payable by August 1, 1988. The record indicates, however, that wife turned over this entire amount to her counsel in partial payment of his fees, and husband admitted in his affidavit in support of his motion to dismiss the section 2—1401 petition that this $20,000 payment was actually intended as a payment of wife's attorney fees.

The property settlement agreement also stated that all of the payments made by husband were to be included in wife's gross income reported to the Internal Revenue Service and were tax deductible by husband. Wife was entitled to claim the dependency exemptions for the minor children on her Federal and State income tax returns for the 1988 tax year, but husband was entitled to claim the dependency exemptions for each year after 1988.

Under the property settlement agreement, each of the parties was required to contribute to the reasonable expenses incident to the college educations of the children.

Husband was obligated to maintain insurance policies on his life in the minimum amount of $150,000 designating each of the minor children as beneficiary of $75,000 until the child reaches 19 years of age or becomes enrolled in college. After each child's enrollment in college, husband was obligated to maintain life insurance in the amount of $50,000 for the first two years, and in the amount of $20,000 for

the last two years, of each child's college attendance, but not beyond a child's attainment of age 23.

Wife was obligated to execute and keep in effect estate planning documents which provided that, upon her death, the net proceeds from the sale of residential property purchased by wife within 120 days of the effective date of the agreement be distributed to an educational trust for the benefit of the minor children. Wife was further obligated to preserve the net proceeds as an asset of her estate in the event the residence was sold.

The agreement provided further that husband was to assign to wife his right, title and interest in the 1984 Honda Civic station wagon, and wife was to assign to husband her right, title and interest in the 1985 Honda Prelude. Wife was entitled to retain the furniture and furnishings of the marital home; her bank accounts; and her personal property. Husband was entitled to retain his personal property; his Kraft Thrift Plan, valued at $2,300; individual retirement accounts, valued at $2,000; other bank accounts with deposits of less than $3,000; and various other investments, valued at less than $10,000 in the aggregate.

Each of the parties was responsible for the payment of his or her own attorney fees.

The property settlement agreement also provided that of the $140,000 held in escrow as proceeds from the sale of the marital home, $3,000 was to be paid as attorney fees to counsel appointed for the minor children, and $8,000 was to be paid directly to husband, leaving a balance of $129,000. Wife was to receive 75% of the balance of that account ($96,750), and husband was to receive the remaining 25% ($32,250) in addition to the $8,000 cash payment indicated above.

The supplemental property settlement agreement, dated the same day as the property settlement agreement, included terms which were at variance with certain of the terms in the original agreement. The supplemental agreement altered the distribution of the balance of the escrow account ($129,000). In lieu of the provisions contained in the original property settlement agreement, husband was to receive 40% ($51,600), of which $25,000 was to be paid to wife as a loan if she purchased a home within the Chicago metropolitan area within 120 days of the date of the agreement.

Wife was to receive 60% ($77,400), including a cash payment of $8,000 paid directly to her. If wife purchased a home within the Chicago metropolitan area within 120 days, the remaining balance ($69,400) was to be distributed as follows:

(i) an amount equal to 10% of the purchase price of the residence, but not to exceed $16,650, was payable to the seller of the residence to be delivered at the time of the signing of the contract, and the remaining balance of the account was payable to the seller of the residence to be delivered at the time of closing on the purchase;

(ii) the remaining $25,000 of husband's 40% share was payable to the seller of the residence to be delivered at the time of closing on the purchase and represented a loan from the husband to the wife which was secured by a second mortgage on the residence, and the second mortgage held by husband was to be recorded no sooner than 90 days after title was issued to the wife.

Wife agreed to indemnify and hold husband harmless from any liability he may incur on any contract to purchase a residence he may execute with her.

The loan by husband to wife was to be repaid within eight years, but was due and payable earlier upon the wife's remarriage or cohabitation with another person; sale or rental of the residence; discontinuance of the residence as wife's principal residence; or wife's removal of either of the minor children from the State of Illinois.

If wife continued to use the residence as her principal residence for four years from the date of the husband's loan, the principal amount of the loan was to be reduced by one-third of the original amount. If wife ceased to use the residence as her primary residence and removed or was granted leave by a court to remove either of the minor children from the State of Illinois within eight years from the date of the loan, then wife was obligated to pay interest on the original amount of the loan at the rate of interest payable on the loan secured by wife's first mortgage on the residence.

If wife failed to complete the purchase of a home within 120 days from the date of the agreement, the undistributed balance remaining in the escrow account was to be disbursed as follows:

(i)  wife was to receive an amount equal to 50% of the sum of

(a) the undistributed balance, and

(b) the amount previously distributed to husband and wife under paragraph 5(a) ($8,000 to wife, and 40%, less $25,000, to husband), and

(c) the amount of any distribution on or after the signing of the contract for the purchase of the residence,

less

(1) the amount previously distributed to wife under paragraph 5(a) ($8,000), and

(2) the amount of any distribution on the signing of the contract for the purchase of the residence;

(ii) husband was to receive the remaining undistributed balance in the account.

The joint parenting agreement, dated the same day as the original and supplemental property settlement agreements, provided that the parties were to maintain joint custody of the two minor children. Under that agreement, husband had physical custody of Thomas on three nights each week and for a portion of each Saturday. Husband had physical custody of Julia on two nights each week and for a portion of each Saturday until Julia attained the age of two, at which time husband's custody of Julia would be the same as that with Thomas. Wife had physical custody of the children during the weekdays, on the remaining week nights, and for a portion of each Saturday and Sunday.

In addition to the custody schedule set forth above, husband was to have custody of the children in all odd-numbered years for one week during the Christmas holidays; for one week at Easter; for two weeks in the summer; on the husband's birthday; on Father's Day; and for one-half of each child's birthday. The parties agreed to alternate custody of the children on other holidays. The agreement provided further that if parenting time did not occur, compensatory parenting time was to be arranged.

Following the dissolution of the marriage, wife purchased a home in accordance with the terms of the supplemental property settlement agreement, and the terms of the joint parenting agreement remained in effect until December 1988.

In November 1988, a dispute arose between the parties over the allocation and scheduling of holiday parenting time. On November 18, 1988, wife advised husband that she intended to take the children to England to visit her family from December 8, 1988, to January 12, 1989. Husband objected to these plans, and on December 2, 1988, husband filed a motion requesting the court to determine the holiday parenting schedule.

The hearing on the motion commenced on December 6, 1988. After hearing only wife's testimony, the court adjourned and continued the hearing to December 14, 1988, and stated that wife was prohibited from leaving the country with the children until an agreement settling the dispute had been reached, or the hearing was continued to its conclusion.

On December 8, 1988, counsel for both parties appeared before the trial court on an emergency motion by wife requesting an order allowing her to leave for England with the children. Wife's attorney represented to the court that an agreement had been reached but had been stalled by husband's demand for attorney fees. Counsel for husband denied that an agreement had been reached and persisted in the demand for attorney fees. Finding that the parties had not entered into a final, integrated agreement, the trial court entered an order barring wife from taking the children to England. Wife had, however, already left for England when this order was entered.

On December 14, 1988, counsel for both parties appeared before the court and presented a supplemental joint parenting agreement. The supplemental agreement provided that wife was to return the children to Illinois on December 28, 1988; wife agreed to pay husband's attorney fees relative to the petitions in the amount of $1,500; husband was to have custody of both children, including overnights, from December 28, 1988, at 7 p.m. through January 4, 1989, at 12 noon; and husband's regular parenting schedule was expanded to include custody of both children each Friday from 5:30 p.m. through Sunday at 9 a.m., and at 2 p.m. on alternate Sundays; and each Tuesday from 5:30 p.m. through Wednesday at 9 a.m., plus an additional two weeks in the summer.

The supplemental agreement provided further that wife agreed to forego a payment from husband in the amount of $813.55 as costs for psychological examinations, and she agreed to pay husband $86.45. Wife also agreed not to apply for British passports for the two minor children and acknowledged that Illinois was the habitual residence of the minor children.

On January 4, 1989, wife filed a *pro se* motion to vacate the December 14, 1988, order. In her motion, wife alleged that her attorneys had been scheduled to have an agreed order entered on December 8, 1988, which would have allowed her to leave for England that day. She also asserted that her attorneys had assured her that it would be all right for her to leave as scheduled and that when she left the country she believed that the agreed order had been entered. Wife alleged further that she executed the supplemental parenting agreement under duress in order to avoid being held in contempt of court and the prospect of immediately returning to Chicago.

Wife also asserted in her *pro se* motion that she did not receive sufficient funds from husband to adequately provide for her needs and the needs of the minor children and that the financial penalties imposed by the supplemental agreement would cause extreme hardship

to herself and to the children. Attached as an exhibit to her *pro se* motion was a schedule of wife's monthly income and expenditures and a listing of her other outstanding debts. These schedules reflected that wife received $2,500 in unallocated maintenance and child support, that her monthly expenses totalled $2,500, including a mortgage payment of $928, and that she had outstanding debts of approximately $14,000, in addition to her regular monthly living expenses.

On October 20, 1989, wife, represented by new counsel, filed a petition to vacate the judgment for dissolution of marriage pursuant to section 2—1401 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1401). Her section 2—1401 petition sought relief from the judgment for dissolution, which incorporated the original property settlement and joint parenting agreements, and from the supplemental property settlement and supplemental joint parenting agreements, alleging that these agreements were unconscionable. The petition was supported by wife's affidavit in which she asserted, in relevant part, that she had entered into these agreements under duress and not of her own free will.

Wife's affidavit also alleged factual matters to demonstrate in what manner husband exercised duress and coercion over wife during the course of the dissolution proceedings and negotiation of these agreements, including elimination of wife's credit card privileges; repeated threats to sue for custody of the two minor children; refusal to make mortgage, utility, or car payments; refusal to provide support for wife or the minor children, and the making of a false promise to allow wife and the minor children to permanently reside in the United Kingdom.

On December 15, 1989, husband filed a motion to dismiss under section 2—615 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—615), asserting that the petition was legally insufficient. Husband simultaneously filed a motion to dismiss under section 2—619 (Ill. Rev. Stat. 1989, ch. 110, par. 2—619), contending that the settlement agreements were not unconscionable and were not entered into under fraud, duress, or coercion. In support of his motion to dismiss, husband filed an affidavit in which he did not contradict or controvert the factual assertions in wife's affidavit supporting her section 2—1401 petition. Rather, husband's affidavit set forth many of the terms of the settlement agreements and alleged that they were fair to both parties and could not be considered unconscionable.

Wife's petition for section 2—1401 relief and husband's motion to strike and dismiss were called for hearing on February 14, 1990. After hearing argument by counsel for both parties, the trial court

granted husband's motion and dismissed the section 2—1401 petition, finding that wife had not presented sufficient facts to establish that the agreements were unconscionable and that she had not shown due diligence.

Wife has appealed the trial court's dismissal of her section 2—1401 petition to vacate the judgment.

■ Section 2—1401 of the Code of Civil Procedure provides a comprehensive statutory procedure by which final orders, judgments, and decrees may be vacated after 30 days from the entry thereof. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1401(a).) The purpose of a petition under section 2—1401 is to bring before the court matters of fact which were unknown at the time the judgment was entered, and if known, would have affected or altered the judgment that was entered. *In re Marriage of Klebs* (1990), 196 Ill. App. 3d 472, 479, 554 N.E.2d 298, 303; *In re Marriage of Tzoumas* (1989), 187 Ill. App. 3d 723, 728-29, 543 N.E.2d 1093, 1096; *Manning v. Meier* (1983), 114 Ill. App. 3d 835, 837-38, 449 N.E.2d 560, 562.

■ To be entitled to relief under section 2—1401, the party seeking relief must show by a preponderance of the evidence that (1) a meritorious claim or defense exists; (2) the petitioner exercised due diligence in discovering the defense or claim in the original action; (3) despite such diligence and through no fault on the part of petitioner, the error of fact or valid claim or defense was not made apparent to the trial court at the time of the original action; and (4) petitioner exercised due diligence in the section 2—1401 petition. (*Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 220-21, 499 N.E.2d 1381, 1386; *Marriage of Klebs*, 196 Ill. App. 3d at 480, 554 N.E.2d at 303; *In re Marriage of Duffey* (1988), 168 Ill. App. 3d 1086, 1089, 523 N.E.2d 371, 373.) In determining the reasonableness of the excuse offered by the petitioner, all of the circumstances attendant upon the entry of the judgment must be considered, including the conduct of the litigants and their attorneys. *Airoom*, 114 Ill. 2d at 222-23, 499 N.E.2d at 1387.

■ A section 2—1401 petition invokes the equitable powers of the court as justice and fairness require and should be considered in light of equitable principles. (*Airoom*, 114 Ill. 2d at 225, 499 N.E.2d at 1388; *Manning*, 114 Ill. App. 3d at 838, 449 N.E.2d at 562.) Whether a petition to vacate should be granted depends upon the facts and equities presented. (*Beno v. DeBoer Asphalt Paving Co.* (1983), 114 Ill. App. 3d 871, 874, 449 N.E.2d 1021, 1023.) Relief is granted under this section in order to achieve justice, and a liberal construction is

used to achieve that end. *Beno*, 114 Ill. App. 3d at 874, 449 N.E.2d at 1023.

Although relief generally is not granted where the moving party or his counsel has been negligent, this requirement need not be strictly applied, and when justice and fairness require, a judgment may be vacated even though the requirement of due diligence has not been satisfied. *Airoom*, 114 Ill. 2d at 225, 499 N.E.2d at 1388; *Manning*, 114 Ill. App. 3d at 838, 449 N.E.2d at 562.

In her petition for section 2—1401 relief, wife alleged that she entered into the original and supplemental property settlement agreements under duress and coercion by husband. In her supporting affidavit, wife asserted factual matters to demonstrate in what manner husband exercised duress and coercion over wife, including elimination of wife's credit card privileges; repeated threats to sue for custody of the two minor children; refusal to make mortgage, utility, or car payments; refusal to provide support for wife or the minor children, and the making of a false promise to allow wife and the minor children to permanently reside in the United Kingdom.

Wife's affidavit alleged further that after the separation and prior to entry of the judgment of dissolution, husband would on several occasions offer her a support check and then make various demands of wife. When wife refused to accede to those demands, husband would withdraw the support check and leave the house without giving wife any money. As a result of husband's refusal to provide support for wife and the minor children, wife was often compelled to depend on the beneficence of friends for money for food and, on other occasions, was required to sell jewelry in order to acquire money to buy food for herself and her children.

Husband brought a motion to dismiss under section 2—615 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—615), asserting that the petition was legally insufficient. When a party files such a motion challenging a petition for relief under section 2—1401, the motion admits all well-pled facts and attacks only the legal sufficiency of the petition. (*Ostendorf v. International Harvester Co.* (1982), 89 Ill. 2d 273, 279-80, 433 N.E.2d 253, 256-57; *Elfman v. Evanston Bus Co.* (1963), 27 Ill. 2d 609, 610, 190 N.E.2d 348, 349; *Manning*, 114 Ill. App. 3d at 839, 449 N.E.2d at 563.) Thus, husband's motion to dismiss admitted the well-pled allegations in wife's petition.

In addition, we note that husband also filed a motion to dismiss under section 2—619 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—619), alleging that the settlement agree-

ments were not unconscionable and were not entered into under fraud, duress, or coercion. Husband presented reasons for these allegations in his motion and filed an affidavit in support of the motion. This motion and affidavit, in effect, opposed wife's section 2—1401 petition on its merits and were in the nature of a motion for summary judgment.

Like a motion brought under section 2—615, a motion to dismiss under section 2—619 admits all well-pled facts. (*Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 545, 370 N.E.2d 223, 225.) Where a motion to dismiss is made pursuant to section 2—619 on grounds not appearing on the face of the pleading attacked, the motion must be supported by affidavit. (*Premier Electric Construction Co. v. La Salle National Bank* (1983), 115 Ill. App. 3d 638, 643, 450 N.E.2d 1360, 1363.) Thus, when a party responds to a section 2—1401 petition on the merits, he must raise arguments challenging the relief sought and must file an affidavit opposing the factual assertions made by the petitioner. (See generally *Airoom*, 114 Ill. 2d at 218-20, 499 N.E.2d at 1385; *Ostendorf*, 89 Ill. 2d at 280, 433 N.E.2d at 256; *Elfman*, 27 Ill. 2d at 611, 190 N.E.2d at 349; *Campbell v. Kaczmarek* (1976), 39 Ill. App. 3d 465, 468, 350 N.E.2d 97, 100.) In the instant case, husband did not contradict the wife's factual assertions either in his affidavit or in his motion to dismiss but, instead, challenged the legal conclusions of unconscionability.

Examination of the original and supplemental property settlement agreements, both dated March 7, 1988, reveals that wife received substantially less under the supplemental agreement, but the record does not reveal the consideration given in exchange for the concessions made by wife.

Under the original agreement, wife was to receive outright $96,750, 75% of the $129,000 held in escrow as proceeds from the sale of the marital home. This amount represents approximately one-half of the value of the assets in the marital estate ($200,000) at the time the marriage was dissolved.

Under the supplemental agreement, wife received $77,400. Of that amount, $8,000 was paid directly to her, and $69,400 was paid to the seller of the home she desired to purchase. Wife received an additional $25,000 as a loan from husband which was secured by a second mortgage in favor of husband and was recorded against the title to the property. Thus, of the $129,000 held in the escrow account, wife received $77,400, plus a loan and second mortgage held by husband in the amount of $25,000 which she was required to repay to husband.

Under the original agreement, husband was to receive $32,250. Under the supplemental agreement, husband received $51,600, including a loan to wife in the amount of $25,000.

Consequently, under the terms of the supplemental agreement, wife's distribution was diminished by $19,350, and husband's distribution was increased by a like amount. The record does not reflect the reason for the departure from the original agreement.

Although husband assumed all of the marital debt ($68,000), the evidence established that his net monthly income was $7,610 to $7,819. Wife's monthly income amounted to the $2,500 she received in unallocated maintenance and child support. Thus, husband was in a much better position to repay the debt accumulated during the course of the marriage. Moreover, this provision was included in the original property settlement agreement and does not explain why wife's position was dramatically worsened and husband's position was dramatically improved by the supplemental agreement.

It has consistently been held that section 2—1401 relief is appropriate where a settlement agreement is unconscionable or was entered into because of duress, coercion, or fraud. (See *In re Marriage of Reines* (1989), 184 Ill. App. 3d 392, 540 N.E.2d 394; *Ebersole v. Ebersole* (1988), 171 Ill. App. 3d 632, 525 N.E.2d 1211; *In re Marriage of Carlson* (1981), 101 Ill. App. 3d 924, 428 N.E.2d 1005; *In re Marriage of Lorenzi* (1980), 84 Ill. App. 3d 427, 405 N.E.2d 507; *Zieske v. Zieske* (1976), 41 Ill. App. 3d 746, 354 N.E.2d 513.) A motion to dismiss should not be granted unless it clearly appears that no set of facts could ever be proved that would entitle the petitioner to recover. *Ostendorf*, 89 Ill. 2d at 280, 433 N.E.2d at 256.

Wife's motion to vacate was filed well within the two-year period mandated by the statute. Assuming, as we must, that the well-pled allegations in wife's section 2—1401 petition are admitted by husband, we believe that these assertions were properly raised in a section 2—1401 petition and, if proved, would provide support for her claim that settlement agreements were unconscionable and were entered into under fraud, duress, or coercion. Because it does not clearly appear that wife could never have proved any set of facts that would entitle her to relief, the trial court should have denied husband's motion to dismiss and should have granted wife an evidentiary hearing on her motion for section 2—1401 relief.

We next address wife's contention that the maintenance and child support provisions were inadequate and unconscionable.

Under the property settlement agreement, husband was obligated to pay wife unallocated maintenance and child support in the sum of

$2,500 per month through and including the month of February 1991, in addition to the sum of $2,000 in 1989 and in 1990, payable by January 31 of each year. After February 1991, husband was obligated to pay child support in the sum of $1,400 per month, and the payment of maintenance ceased.

Husband was also obligated to pay wife an additional $20,000 ($10,000 payable upon dissolution of the marriage, $5,000 payable by May 10, 1988, and $5,000 payable by August 1, 1988) as "maintenance." Wife's section 2—1401 petition challenges whether this payment can be construed as a payment of maintenance, and the record reveals that wife turned over this entire amount to her counsel in partial payment of his fees and that husband admitted that this $20,000 payment was actually a payment of wife's attorney fees. We believe on remand, the trial court should carefully consider whether this payment cannot be construed as a payment of maintenance.

■■ ■ Section 505 of the Illinois Marriage and Dissolution of Marriage Act (Act) provides that the minimum amount of support for two children equals 25% of the supporting party's net income. (Ill. Rev. Stat. 1989, ch. 40, par. 505(a)(1).) The Act defines "net income" as the total of all income from all sources, minus Federal and State income tax, social security payments, mandatory retirement contributions, union dues, health and hospital insurance premiums, prior obligations of support or maintenance, expenditures for repayment of debts that represent reasonable and necessary expenses for the production of income, medical expenditures necessary to preserve life or health, and reasonable expenditures for the benefit of the child and the other parent, exclusive of gifts. Ill. Rev. Stat. 1989, ch. 40, par. 505(a)(3).

The evidence established that husband earned a net income of $7,344 per month (excluding his annual net bonus of $14,000 to $16,500) and was obligated to pay $900 per month in child support from a prior marriage. Thus, husband's monthly net income, exclusive of bonus, totaled $6,444. If the value of husband's annual net bonus is spread over a 12-month period and added to his other earnings, his monthly net income totaled $7,610 to $7,819. Under section 505 of the Act, husband was obligated to pay a minimum of 25% of his net income ($1,902 to $1,954) to support the two minor children.

■■ For the first three years following the dissolution of the marriage, husband was obligated to pay $2,500 per month in unallocated maintenance and child support. Although this amount represents a combined figure of his obligations to his children and former spouse, husband was still bound to meet the minimum amount of child

support set forth in the statute. Consequently, we must construe the combined figure to represent $1,902 to $1,954 in child support, and the remainder, $546 to $598, to represent maintenance.

■■■ Section 504 of the Act provides that maintenance shall be awarded in such amount and for such periods of time as the court deems just upon consideration of all relevant factors, including (1) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently; (2) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment; (3) the standard of living established during the marriage; (4) the duration of the marriage; (5) the age and the physical and emotional condition of both parties; (6) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance; and (7) the tax consequences of the property division upon the respective economic circumstances of the parties. Ill. Rev. Stat. 1989, ch. 40, par. 504(b).

In the instant case, the record reveals that husband is a licensed attorney with net earnings of $7,610 to $7,819 per month. Wife is trained as a paralegal, but because she has been responsible for the care of the two minor children, she has not been employed outside the home. Excluding the lump sum payment of $2,000 in 1989 and 1990, wife receives $2,500 per month in unallocated maintenance and child support through February 1991, and after that time will receive only $1,400 per month in child support, well below the statutory minimum of 25% of husband's net monthly income ($1,902 to $1,954).

The parties were married for four years and lived in Evanston, Illinois, in a home which sold for $392,000 in October 1987. Husband assumed all of the marital debts, approximately $68,000, and wife had outstanding debts of approximately $14,000, in addition to her monthly living expenses, mortgage and home improvement loan amounts.

Under the property settlement agreement, all of the payments made by husband were to be included in wife's gross income reported to the Internal Revenue Service and were tax deductible by husband. Wife was entitled to claim the dependency exemptions for the minor children on her Federal and State income tax returns for the 1988 tax year, but husband was entitled to claim the dependency exemptions for each year after 1988.

■■ The well-pled allegations in wife's motion to vacate must be taken as admitted. Considering the statutory factors within the context of the instant case, we find that wife's allegations and the facts

in the record raise sufficient questions to warrant a review of the maintenance and child support provisions. If proved, these allegations would support her claim that the maintenance and child support provisions were inadequate and unconscionable. Consequently, we believe that the trial court erred in granting husband's motion to dismiss and should have conducted an evidentiary hearing on wife's motion for section 2—1401 relief.

Finally, we consider wife's claim that the supplemental joint parenting agreement unfairly favored husband and was unconscionable.

The supplemental joint parenting agreement modified the original joint parenting agreement which provided that husband had custody of both children each Monday from 5:30 p.m. through Tuesday at 8:30 a.m., each Thursday from 5:30 p.m. through Friday at 8:30 a.m., and each Saturday from 1 p.m. through Sunday at 9 a.m. The original joint parenting agreement also included a provision for "compensatory time" to be agreed upon in the event that either parent's custody schedule could not be accommodated. The supplemental joint parenting agreement did not include a similar provision, and made no reference to the "compensatory time" provision in the original agreement.

Under the supplemental joint parenting agreement, husband's regular parenting schedule was expanded to also include custody of both children each Friday from 5:30 p.m. through Sunday at 9 a.m., and at 2 p.m. on alternate Sundays; and each Tuesday from 5:30 p.m. through Wednesday at 9 a.m., plus an additional two weeks in the summer. In addition, husband received the right to have custody of both children, including overnights, from December 28, 1988, at 7 p.m. through January 4, 1989, at 12 noon.

The record reflects that wife's visit to England with the two minor children over the 1988 Christmas holidays deprived husband of only nine evenings with the children. No arrangement for nine evenings of compensatory time for husband was made as provided under the original joint parenting agreement. Rather, the parties entered into the supplemental joint parenting agreement which permanently altered the custody schedules of both parents. Under the terms of the supplemental joint parenting agreement, husband was granted custody of the children five nights each week, all day Saturday, and a portion of Sunday. Wife received custody on the remaining two weeknights, each weekday, and a portion of each Sunday. Husband also received the right to custody over four weeks during the summer. Thus, in exchange for nine evenings lost during December 1988, husband received custody of both children five nights each week, every Saturday,

and a portion of each Sunday until the children reach the age of majority.

Wife asserted in her section 2—1401 petition and supporting affidavit that this agreement was entered into under duress. She alleged that her attorneys were scheduled to have an agreed order entered on December 8, 1988, which would allow her to leave for England that day, that her attorneys had assured her that it would be all right for her to leave as scheduled, and that when she left the country she believed that the agreed order had been entered.

At the hearing on December 8, 1988, wife's attorney represented to the court that an agreement had been reached but had been stalled by husband's demand for attorney fees. Yet, wife was required to pay husband's attorney fees under the agreement ultimately entered on December 14, 1988. In order to avoid contempt and the prospect of immediately returning to Chicago, wife agreed to the terms of the supplemental joint parenting agreement.

■■■ Taking as admitted the well-pled allegations in wife's section 2—1401 petition, we find that these assertions and the facts in the record sufficiently allege a basis for a rehearing. If proved, these assertions would provide support for wife's claim that the terms of the supplemental joint parenting agreement were unconscionable. Consequently, we believe that the trial court erred in granting husband's motion to dismiss and should have conducted an evidentiary hearing on wife's motion for section 2—1401 relief.

For the foregoing reasons, the order dismissing wife's section 2—1401 motion is reversed, and the cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

RAKOWSKI, P.J., and McNAMARA, J., concur.