*In re* MARRIAGE OF JESSE M. PALACIOS, Petitioner-Appellant, and CON-STANCE PALACIOS, Respondent-Appellee.

First District (1st Division)    No. 1—93—3154

Opinion filed September 25, 1995.

562

Karl L. Halperin, of Rosenfield, Kaplan & Halperin, of Chicago (David A. Novoselsky, of David A. Novoselsky & Associates, of counsel), for appellant.

Donald K. Birner, of Birner Law Office, of Pekin, for appellee.

JUSTICE BRADEN delivered the opinion of the court:
On March 19, 1990, a judgment for dissolution of marriage was

entered terminating the marriage of petitioner, Jesse M. Palacios, and respondent, Constance Palacios. Subsequent to the divorce, respondent learned that petitioner concealed $5.38 million which he had won in the Illinois State Lottery on January 6, 1990. Respondent then filed a motion to vacate the judgment, asserting that the lottery winnings were marital property and, had she known of the extent of petitioner's assets, she would never have consented to the settlement. Respondent filed a motion for summary judgment on her petition to vacate, seeking a finding that the lottery proceeds were marital property. Petitioner filed a motion to strike the summary judgment motion, supported with a counteraffidavit. The trial court granted respondent's motion, vacating the dissolution judgment in all respects except for the dissolution of the marriage itself.

Petitioner appeals, contending that (1) respondent's summary judgment motion was improperly granted; (2) he was erroneously denied the opportunity to file an answer to respondent's summary judgment motion; (3) the trial court abused its discretion in granting respondent's motion; (4) the lottery money is nonmarital property as it was obtained subsequent to the judgment for separate maintenance; (5) the lottery winnings constituted nonmarital property because they were obtained subsequent to the judgment to a legal separation; and (6) the trial court erroneously found that the separate maintenance judgment was vitiated by the parties' later conduct.

We affirm and remand.

The following facts are pertinent. Petitioner and respondent were married on February 2, 1973, and lived together for approximately three years. On May 25, 1976, respondent fled the marital domicile as a result of physical abuse she suffered at the hands of petitioner. On August 9, 1977, the trial court entered a judgment for separate maintenance requiring petitioner to relinquish all of respondent's personal effects, all of the children's clothing, and furniture. It also provided for the care and custody of the children. There was neither an inclusion of a final disposition of property rights in this agreement nor a resolution of further issues indicative of marital termination. There was no waiver by either party with respect to future property rights. In 1979 or 1980, subsequent to the entry of the order, respondent and petitioner resumed the marital relationship, which continued until 1987 or 1988.

In March 1990, the trial court issued a judgment for the dissolution of marriage containing details concerning the allocation of marital debt, responsibility for the children's medical expenses, child support and property distribution. Unbeknownst to respondent, petitioner won $5.38 million in the Illinois State Lottery on January

6, 1990 (he learned he won on January 8 and filed for divorce on the 10th). He presently receives nearly $300,000 per year for the next 20 years in proceeds. Although petitioner won the lottery in January 1990, he did not claim his prize until October of that year, well after he had obtained a divorce from respondent. When judgment was entered dissolving the marriage, the lottery ticket remained secured in a safe deposit box in a Downers Grove bank where it had been since petitioner learned it was the winning ticket. Respondent and her two children with petitioner learned of petitioner's good fortune three days before he and his girlfriend appeared on television to claim the prize. Petitioner admits he never told respondent or his children that he won the lottery.

Shortly before he and his girlfriend, Arlene Herbst, publicly claimed the lottery winnings, petitioner entered into a partnership agreement with Herbst, wherein he agreed to share 10% of the earnings with her. This agreement was made retroactive to December 1, 1989, in an attempt to show that the lottery winnings were joint property. Herbst contrarily admits that she told her son that petitioner won the lottery, never indicating that she was entitled to any portion of the proceeds. Upon claiming the prize in October 1990, petitioner and Herbst represented to lottery officials that they recently located the ticket, although petitioner's deposition reflects that he learned that he held the winning ticket on January 8, 1990, two days after the drawing. In her affidavit, Arlene Herbst also admits that she and petitioner lied to lottery officials and the media about their late discovery of the ticket.

After being apprised of petitioner's lottery millions, respondent filed a motion to vacate the judgment for dissolution of marriage and moved for summary judgment thereon. In support, several affidavits were filed. Respondent's affidavit stated that although she and petitioner maintained separate residences, they engaged in sexual relations from 1980 to 1987. Renee Palacios, the youngest daughter of the parties, stated that her father stayed at their home four or five nights per week during 1980 to 1988. He spent every holiday at their house and slept in the same bed with respondent. Petitioner also had his telephone calls forwarded to their house. The eldest daughter, Rachel Palacios, confirmed her sister's statements and added that her father vacationed with them and had a key to their home. Respondent and her two daughters also unequivocally affirm that petitioner never told them he won the lottery.

Petitioner filed a motion to strike respondent's motion for summary judgment with a supporting counteraffidavit. In the counteraffidavit, petitioner denies misrepresenting the extent of his assets to

respondent and resuming the marital relationship with her. These assertions directly contradict his prior deposition testimony which evinces his deliberate concealment of his lottery winnings and his continuing his sexual relationship with respondent. In his deposition, petitioner admits to having sexual relations with respondent, taking the family on a vacation, spending holidays with the family, and moving his personal belongings into respondent's home. He also admits that he lied about the date he discovered he had the winning ticket, stating that he learned he had won on January 8, 1990, two days after the drawing. Other than the general denial in the counter-affidavit which contradicted his earlier statement, petitioner offers no evidence rebutting respondent's affidavits supporting her claim that he deliberately concealed his winnings until after they were divorced.

After considering respondent's motion for summary judgment, her supporting documents and the opposing documents of petitioner, the trial court granted the motion, vacating the judgment for dissolution of marriage and finding that the lottery ticket was marital property. The court also found that, subsequent to the separate maintenance judgment of August 9, 1977, the parties resumed their marital relationship, thus abrogating the judgment. Petitioner appeals.

Petitioner initially opines that respondent was not entitled to relief under section 2—1401 of the Code of Civil Procedure (735 ILCS 5/2—1401 (West 1992)), as she failed to demonstrate the requisite diligence in attempting to discover the extent of his wealth.

■ Section 2—1401 enables parties to obtain "[r]elief from final orders and judgments, after 30 days from the entry thereof, *** upon petition" "supported by affidavit or other appropriate showing as to matters not of record." (735 ILCS 5/2—1401(a), (b) (West 1992); see *Lubbers v. Norfolk & Western Ry. Co.* (1984), 105 Ill. 2d 201, 473 N.E.2d 955.) The purpose of section 2—1401 is to bring errors of fact to the court's attention which, if known to the court or the moving party at the time of judgment, would have prevented the judgment's rendition. (*Kalan v. Palast* (1991), 220 Ill. App. 3d 805, 581 N.E.2d 175.) The petitioner bears the burden of demonstrating a right to relief by a preponderance of the evidence. 735 ILCS Ann. 5/2—1401 (Smith-Hurd 1992); *In re Marriage of Frazier* (1990), 203 Ill. App. 3d 847, 561 N.E.2d 160.

■ The petitioner must specifically present factual allegations essential to sustain (1) the existence of a meritorious claim or defense; (2) due diligence in discovering the claim or defense in the first action; (3) a showing that the original failure to present the claim or defense did not result from negligence or fault of petitioner; and (4)

due diligence in pursuing the petition for vacation. (*In re Marriage of Hoppe* (1991), 220 Ill. App. 3d 271, 580 N.E.2d 1186.) Relief from final judgments and orders rests within the equitable powers of the trial court and its determination will not be overturned absent an abuse of discretion. *Klein v. Steel City National Bank* (1991), 212 Ill. App. 3d 629, 571 N.E.2d 751.

The issue to be determined is whether respondent has presented allegations sufficient to warrant section 2—1401 relief. There is no dispute that she has satisfied two of the four elements necessary to sustain a section 2—1401 action: a meritorious claim and due diligence in pursuing her petition for vacation. Petitioner, however, alleges that respondent lacked diligence in failing to discover the extent of his assets in the initial proceeding.

This court has held that a judgment may be vacated in the interests of justice and fairness although there was a lack of diligence in presenting the meritorious claim or defense to the trial court. (*Lutz v. Lutz* (1977), 55 Ill. App. 3d 967, 371 N.E.2d 348.) Further, the due diligence requirement has been relaxed in circumstances where there is fraud or unfair conduct by the plaintiff. *Carroll Service Co. v. Schneider* (1986), 144 Ill. App. 3d 38, 494 N.E.2d 253; *In re Adoption of Barker* (1976), 37 Ill. App. 3d 721, 346 N.E.2d 26 (where there is fraud or unfair conduct on the part of the plaintiff, the due diligence requirement will not be strictly enforced).

■ Although property settlement agreements are generally favored, an agreement may be vacated if it is unconscionable or if it is the product of fraud or coercion on the part of either party. (*In re Marriage of Carlson* (1981), 101 Ill. App. 3d 924, 428 N.E.2d 1005.) Fraud exists where one party's knowing and material misrepresentations induce detrimental reliance by the other party. (*Ebersole v. Ebersole* (1988), 171 Ill. App. 3d 632, 525 N.E.2d 1209.) "Fraudulent concealment consists of affirmative acts or misrepresentations intended to exclude suspicion or prevent injury. [Citation.] However, nondisclosure of a material fact is 'in essence a misrepresentation.' " *In re Marriage of Frazier* (1990), 203 Ill. App. 3d 847, 852-53, 561 N.E.2d 160, 164, quoting *Garmisa v. Garmisa* (1972), 4 Ill. App. 3d 411, 423, 280 N.E.2d 444, 452.

At the hearing, petitioner represented that he had no profession and currently was unemployed. The agreement's terms reflect this claim. The agreement requires petitioner to pay $325 per month in child support for both children—for Rachel until the age of 18 years and for Renee for life. Petitioner also agreed to pay "all extraordinary medical and dental expenses incurred by his minor children, Rachel to the age of 18 years and Renee to the age of 25 years." Respondent

waived spousal maintenance, believing that she could care for herself and believing that petitioner was unemployed.

This agreement was made in contravention of both fair dealing and good faith. Instead it is a result of petitioner's successful attempt to conceal his assets from respondent, preventing her from making a reasoned decision with respect to the details of the divorce judgment. The agreement is clearly disproportionate considering the relative position of each party. One possessing the wealth of petitioner is capable of paying more than $325 per month in support for two children.

Petitioner wilfully and deliberately hid his lottery winnings from respondent by securing the ticket in a safe deposit box until after the divorce was final. Petitioner himself admits that he learned that he won the lottery two days after the drawing, while he was still married to respondent. He lied to his daughter, to lottery officials and to the media about the timeliness of his discovery.

■ Petitioner's failure to apprise respondent that he had won $5.38 million in the lottery during their marriage is unequivocally the nondisclosure of a material fact. This fraudulent concealment directly induced respondent into agreeing to a settlement she never would have agreed to had she known the truth. She also would not have agreed to waive maintenance.

*Ridgway v. Ridgway* (1986), 146 Ill. App. 3d 463, 497 N.E.2d 126, involved a factual scenario relatively similar to the one with which we are presented here. In *Ridgway*, a wife sought to vacate the judgment for dissolution of her marriage. She alleged that her former husband fraudulently misrepresented his assets and that she relied upon this misrepresentation in agreeing to the property settlement. Had she known of the true extent of his wealth, she contended that she would never have agreed to the settlement. The trial court granted the wife's petition to vacate and this court affirmed the trial court. This court held that where a husband fraudulently misrepresented his assets, where he admitted to such misrepresentation, and where a wife relied on the husband's fraudulent conduct, she did not lack due diligence for purposes of section 2—1401. We find that, as the agreement was fraudulently procured, respondent did not lack due diligence in discovering the extent of petitioner's assets.

■ Petitioner's next allegation of error concerns the trial court's failure to permit him to file an answer to respondent's summary judgment motion and the court's failure to conduct an evidentiary hearing on the motion. Where there are sufficient uncontroverted, admitted facts before a court of review warranting the vacation of a judgment for dissolution, it is "senseless" to remand the matter to

the trial court for an evidentiary hearing. *In re Marriage of Frazier* (1990), 203 Ill. App. 3d 847, 854, 561 N.E.2d 160, 165.

The record demonstrates that the trial court considered petitioner's motion to strike and counteraffidavit in support of the motion effectively as an answer to respondent's summary judgment motion. Petitioner's motion to strike answers the allegations in respondent's motion. His attached counteraffidavit specifically denies respondent's allegations that they resumed their marital relationship and that he misrepresented his economic circumstances. Prior to the filing of this counteraffidavit, however, petitioner admitted the very facts he later denied. He specifically admitted concealing his lottery money from respondent and renewing the marital relationship with her. The affidavit of petitioner's girlfriend also supports the contention that he deliberately hid his winnings from respondent. Finally, all of the evidence presented by respondent supports petitioner's fraudulent concealment and their resumption of the marital relationship. We conclude that petitioner's deposition testimony in addition to the sworn affidavits supporting respondent's position sustain the trial court's finding that an evidentiary hearing was unwarranted, and we decline to remand on that basis.

■ Petitioner next argues that the trial court abused its discretion in granting respondent's summary judgment motion. An appellate court reviews summary judgment orders *de novo*. (*Myers v. Health Specialists, S.C.* (1992), 225 Ill. App. 3d 68, 587 N.E.2d 494.) A summary judgment order is properly entered when the pleadings, depositions, affidavits and admissions show that there is no genuine existence of material fact and that the movant is entitled to judgment as a matter of law. (*Siegel v. Levy Organization Development Co.* (1991), 219 Ill. App. 3d 579, 579 N.E.2d 1112.) The mere suggestion that a genuine issue of material fact exists without supporting documentation does not create an issue of material fact precluding summary judgment. (*Illinois Valley Minerals Corp. v. Royal-Globe Insurance Co.* (1979), 70 Ill. App. 3d 296, 388 N.E.2d 253.) A court of review's determination as to whether the record supports a grant of summary judgment is one of law, made without deference to trial court determinations (*Masinelli v. McDonald* (1993), 251 Ill. App. 3d 398, 622 N.E.2d 854), and may be based on any grounds called for by the record. *National Bank v. Westinghouse Electric Corp.* (1992), 235 Ill. App. 3d 697, 600 N.E.2d 1275.

The trial court was required to determine if there was a genuine issue of material fact which would necessitate proceeding to trial. The record before us indicates the following. Renee Palacios, the youngest daughter of the parties, stated that her father did not tell

her he won the lottery in January, because he "figured" she would see him on television accepting the prize in October. On October 6, 1990, Rachel Palacios learned that her father won the lottery from a radio report. She immediately called her mother, who was completely unaware of petitioner's good fortune. Further, petitioner specifically lied to Rachel telling her that, after searching through thousands of old tickets and comparing them to winning lottery numbers, he discovered (in October) he won the lottery in January.

Again, examination of petitioner's deposition reveals an admission that he did in fact know he won the lottery in January and an admission that he did not tell his wife or children. Soon after learning he won, petitioner placed the winning ticket in a safe deposit box in a Downers Grove bank where it remained for months. Evidently petitioner was aware that he had one year to claim his prize, because mere months before this time period was to expire he claimed the money.

Petitioner argues that his counteraffidavit filed in support of his motion to strike respondent's summary judgment motion demonstrates the existence of a genuine issue of material fact, as it evinces a denial of respondent's allegations. In his counteraffidavit he states, among other things, that he "at no time" misrepresented his economic circumstances to respondent. This is clearly contrary to his admissions in his deposition. Petitioner's later contradiction of his previous statements cannot later create a genuine issue of material fact where none otherwise existed. In fact, this court has held that a factual dispute cannot be created by a party as a result of contradicting a previous unequivocal judicial admission. *Smith v. Armour Plus Co.* (1993), 248 Ill. App. 3d 831, 617 N.E.2d 1346.

The trial court evaluated all the evidence presented and found that there was no factual dispute as to whether the lottery winnings were marital property. We agree and hereby conclude that, as the lottery proceeds were acquired during the marriage, they are marital property. Accordingly, we find it unnecessary to address petitioner's additional contentions in support of his argument that the lottery proceeds are nonmarital property.

For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed and the cause is remanded for further proceedings not inconsistent with this opinion.

Affirmed and remanded.

CAMPBELL, P.J., and BUCKLEY, J., concur.